[Civ. No. 48414. Second Dist., Div. Three. Aug. 27, 1976.]

HENRY ARMENTA, Petitioner, v.
SUPERIOR COURT OF SANTA BARBARA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

586

**COUNSEL**

Minier & McCracken and David Minier for Petitioner.

No appearance for Respondent.

Stanley M. Roden, District Attorney, and Patrick J. McKinley, Deputy District Attorney, for Real Party in Interest.

**OPINION**

**COBEY, J.**—Henry Armenta seeks a writ of mandate to suppress certain evidence which he claims was seized pursuant to an unconstitutional and illegal search. (See Pen. Code, § 1538.5, subd. (o).) On April 23, 1976, this court issued a temporary stay of appellant's trial. On June 9, 1976, we granted an alternative writ and set the matter for hearing.

We now think that the search was illegal but not unconstitutional and will therefore deny the peremptory writ.

*Facts*

In December 1975 and January 1976, the Santa Barbara Sheriff's Department, using one Eugene Lancaster as its informant, undertook a heroin buy program. Lancaster, facing probation revocation in another matter, told sheriff's deputies that he could purchase narcotics from

some 21 persons including appellant, enrolled in the Santa Maria methadone program. Lancaster was himself enrolled in the program during the two months in question. Lancaster had purchased heroin from and had been acquainted with petitioner prior to either's participation in the methadone program.

On January 26, 1976, Lancaster went to the Santa Maria Methadone Clinic with instructions from sheriff's deputies to buy heroin from petitioner. Lancaster was equipped with a hidden transmitter and tape recorder. No official of the clinic was aware of Lancaster's informant status. Inside the clinic Lancaster said to petitioner that he wanted to "score." Petitioner replied "O.K." and the two went outside the clinic to a parked automobile from which petitioner took several balloons filled with heroin and sold them to Lancaster for $30. Immediately thereafter, petitioner was arrested and charged with sale of heroin. (Health & Saf. Code, § 11352, subd. (a).)

## DISCUSSION

Petitioner claims that because Lancaster and he were enrolled in the clinic, Lancaster's informant activities violated state and federal law and deprived him of state and federal constitutional rights. Therefore petitioner asks that the evidence so obtained be suppressed. While we agree with petitioner that a federal regulation was violated by the conduct of the sheriff, we do not think that such violation merits suppression of the evidence.

### I. *Violation of Constitutional Rights*

We first consider appellant's claim that the sheriff's use of Lancaster as an undercover agent for the purchase of heroin violated the right to privacy guaranteed him by article I, section 1 of the California Constitution. ■ The basic test of whether there has been a violation of this right is if a person's personal and objectively reasonable expectation of privacy has been infringed by unreasonable governmental intrusion. (See *Jacobs* v. *Superior Court,* 36 Cal.App.3d 489, 493-494 [111 Cal.Rptr. 449].) ■ It is well settled that the use of an informant does not violate the right of privacy where, as in the instant case, it relates to specific criminal activity. (See *Lewis* v. *United States* (1966) 385 U.S. 206, 209 [17 L.Ed.2d 312, 315, 87 S.Ct. 424]; cf. *White* v. *Davis,* 13 Cal.3d 757, 765 [120 Cal.Rptr. 94, 533 P.2d 222].)

A closer inspection of petitioner's constitutional claim, however, reveals that his expectation of privacy is grounded in the several statutes and regulations—state and federal—which he claims outlawed the use of an informant in a methadone clinic. Assuming that legislation may create a constitutional expectation of privacy where it would not otherwise exist, the extent of such right will depend upon the reasonable application of the legislation. Therefore we turn to that question.[1]

## II. *Applicability of State Law*

■ Petitioner's first statutory contention is that Lancaster's conduct violated Welfare and Institutions Code section 5328. This section states that "[a]ll information and records obtained in the course of providing [a methadone maintenance program] to either voluntary or involuntary recipients of services shall be confidential." Petitioner argues that by using one person enrolled in the program as an informant against another enrollee, sheriff's deputies violated the spirit if not the letter of section 5328. We cannot agree. Section 5328 establishes confidentiality only for "information and records" compiled "in the course of" operating a methadone program. The information which Lancaster transmitted to deputies and which led to the sale of heroin outside the clinic had no relation to the program nor was it obtained by Lancaster under the pretext of program relevance. Although physically within the clinic, the two men simply engaged in a sadly commonplace conversation regarding the possibility of a drug purchase. Therefore, we conclude that section 5328 has no application to the instant case.[2]

---

[1]Petitioner also makes the argument that the sheriff's use of Lancaster to transmit conversations between petitioner and Lancaster inside and outside the clinic violated his Fourth Amendment rights against unreasonable search and seizure. We interpret petitioner's Fourth Amendment right in the instant case to be coextensive with whatever reasonable expectation of privacy he can establish. (See *People* v. *Brannon,* 32 Cal.App.3d 971, 975 [108 Cal.Rptr. 620]; cf. *Katz* v. *United States* (1967) 389 U.S. 347, 350 [19 L.Ed.2d 576, 581, 88 S.Ct. 507].)

Petitioner's remaining constitutional point, that admission at trial of the evidence seized would violate due process of law, is dealt with in a later part of the opinion. (See part IV, *infra.*)

[2]Penal Code section 632 prohibits the recording of "confidential communications." This prohibition, however, does not apply to police informants. (Pen. Code, § 633; *North* v. *Superior Court,* 8 Cal.3d 301, 309, fn. 2 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155].) It might be argued though that California's declared legislative policy of protecting its citizens from the wrongful use of listening devices (Pen. Code, § 630) should be applied in this case if either federal or state laws were thus violated. This would be a misapplication of the legislative policy. Penal Code sections 630 and 633 specifically state that the Legislature did not intend to impose greater restraints on the use of listening

## III. *Applicability of Federal Statute and Regulations*

Petitioner's basic contention in this respect is that federal law regarding confidentiality of drug abuse patient records (21 U.S.C. § 1175 and 42 C.F.R. § 2.19)[3] prohibits the use of informants like Lancaster in methadone clinics. There are two preliminary issues presented by this contention: Do the federal statute and regulations apply to the Santa Maria Clinic and are the regulations within the scope of the rule making authority granted by the statute? We believe both questions must be answered in the affirmative.

devices by law enforcement officers than existed in 1967, the year of the section's enactment. Of course, at that time, neither the federal statute nor regulation (see fn. 3, *infra*), discussed in this opinion, were in existence.

[3]Because of the importance of these provisions, we set them out verbatim to the extent they are pertinent. 21 United States Code section 1175 reads as follows:

"(a) Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e) of this section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

"(b)(1) The content of any record referred to in subsection (a) of this section may be disclosed in accordance with the prior written consent of the patient with respect to whom such record is maintained, but only to such extent, under such circumstances, and for such purposes as may be allowed under regulations prescribed pursuant to subsection (g) of this section.

"(2) Whether or not the patient, with respect to whom any given record referred to in subsection (a) of this section is maintained, gives his written consent, the content of such record may be disclosed as follows:

"(A) To medical personnel to the extent necessary to meet a bona fide medical emergency.

"(B) To qualified personnel for the purpose of conducting scientific research, management audits, financial audits, or program evaluation, but such personnel may not identify, directly or indirectly, any individual patient in any report of such research, audit, or evaluation, or otherwise disclose patient identities in any manner.

"(C) If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

"(c) Except as authorized by a court order granted under subsection (b)(2)(C) of this section, no record referred to in subsection (a) of this section may be used to initiate or substantiate any criminal charges against a patient or to conduct any investigation of a patient."

42 Code of Federal Regulations section 2.19 reads as follows:

"§ 2.19 Undercover agents and informants.—Rules.

"(a) *Definitions.* As used in this section, § 2.19-1, and §§ 2.67 and 2.67-1,—

"(1) The term 'undercover agent' means a member of any Federal, State, or local law enforcement or investigative agency whose identity as such is concealed from either the

## A. *Applicability of Federal Law to the Santa Maria Methadone Clinic*

21 United States Code section 1175, subdivision (a) extends the applicability of the statute to "any drug abuse prevention function conducted, regulated, or directly or indirectly assisted by any department or agency of the United States."[4] Code of Federal Regulations sections 2.1 through 2.67-1, of which regulation 2.19 is a part, apply to any drug abuse prevention function "[f]or the lawful conduct of which in whole or part any license, registration, application, or other authorization is required to be granted or approved by any department or agency of the United States . . . ." (42 C.F.R. § 2.12(a)(2).) At a hearing before the trial court, administrators of the Santa Maria Clinic testified without contradiction that the clinic was bound by federal regulations including those relating to confidentiality of records. In fact, the People in their first brief to this court virtually concede the applicability of the regulations and, thereby implicitly, the statute.

## B. *Validity of the Federal Regulations*

The People, however, challenge the validity of 42 Code of Federal Regulations section 2.19 on the grounds that it deals with subject matter beyond the grant of the regulatory power conferred upon the Secretary of Health, Education and Welfare by 21 United States Code

---

patients or personnel of a program in which he enrolls or attempts to enroll.

"(2) The term 'informant' means a person who, at the request of a Federal, State, or local law enforcement or investigative agency or officer, carries on observation of one or more persons enrolled in or employed by a program in which he is enrolled or employed, for the purpose of reporting to such agency or officer information concerning such persons which he obtains as a result of such observation subsequent to such request.

"(b) *General prohibition.* Except as otherwise provided in paragraph (c) of this section, or as specifically authorized by a court order granted under § 2.67,—

"(1) No undercover agent or informant may be employed by or enrolled in any alcohol or drug abuse treatment program;

"(2) No supervisor or other person having authority over an undercover agent may knowingly permit such agent to be or remain employed by or enrolled in any such program; and

"(3) No law enforcement or investigative officer may recruit or retain an informant with respect to such a program.

"(c) *Exceptions.* The enrollment of a law enforcement officer in a treatment program shall not be deemed a violation of this section if (1) such enrollment is solely for the purpose of enabling the officer to obtain treatment for his own abuse of alcohol or drugs, and (2) his status as a law enforcement officer is known to the program director."

[4]It is worth noting that when this section was amended in 1974 (Pub. L. No. 93-282, 88 Stats. 137, 138 May 14, 1974) the applicability language was broadened and made more specific. It had originally applied to drug abuse prevention functions "authorized or assisted under any provision of [the Drug Abuse Office and Treatment Act of 1972]."

section 1175, subdivision (g). Although it is true that the informant prohibition is somewhat tangential to the question of confidentiality of records, we do not conclude that it is invalid.

■ Regulations duly promulgated under enabling federal legislation will be upheld so long as they are reasonably related to the purposes of the original legislation. (See *Mourning* v. *Family Publications Service, Inc.* (1973) 411 U.S. 356, 369 [36 L.Ed.2d 318, 329-330, 93 S.Ct. 1652].) In addition, we note that the congressional grant of regulatory power conferred upon the secretary by subdivision (g) uses terms deliberately more expansive than the traditional language regarding the promulgation of "such rules and regulations as may be necessary to carry out the provisions of this Act." (See e.g., 42 U.S.C. § 1408.) Instead, the subdivision specifies that the regulations can include definitions, safeguards and procedures "necessary or proper to effectuate the purposes of this section, to prevent circumvention or evasion thereof, or to facilitate compliance therewith." (21 U.S.C. § 1175 (g).) ■ Regulatory latitude is especially tolerated when the congressional legislation does not purport to be exhaustive so far as the evils to be remedied are concerned. (See *American Trucking Assns.* v. *U. S.* (1953) 344 U.S. 298, 309-310 [97 L.Ed. 337, 355, 73 S.Ct. 307].)

■ As the comments on the basis and purpose of regulation 2.19 point out, a possibly frequent purpose of the placement of a police informant in a methadone clinic is to obtain the kind of information which the statute seeks to keep confidential. (See 42 C.F.R. § 2.19-1.) We think it within the reasonable and expert judgment of the secretary to decide that this type of informant conduct is best prevented at the threshold, i.e., by prohibiting their enrollment in drug abuse programs. ■ The construction of legislative intent provided by an agency charged with administration of the legislation is entitled to considerable weight by courts. (See *Lewis* v. *Martin* (1970) 397 U.S. 552, 559 [25 L.Ed.2d 561, 567, 90 S.Ct. 1282]; *Red Lion Broadcasting Co.* v. *FCC* (1969) 395 U.S. 367, 381 [23 L.Ed.2d 371, 383-384, 89 S.Ct. 1794].)

■ Therefore we conclude that 42 Code of Federal Regulations section 2.19 is a valid exercise of the secretary's regulatory power granted him by 21 United States Code section 1175 (g).

C. *Violation of 42 Code of Federal Regulations Regulation 2.19*

■ Thus we arrive at a fundamental inquiry in this case: Did law enforcement officials violate 42 Code of Federal Regulations regulation

2.19 when they employed Lancaster as an undercover agent despite their knowledge that he was enrolled in the clinic and that he would attempt to make drug purchases from another person enrolled in the clinic? The People's response is that regulation 2.19 was not violated because it is part of a legislative and regulatory scheme designed to protect only the confidentiality of *records* of patients enrolled in drug abuse prevention programs and that Lancaster did not discover, utilize or transmit such clinic records of appellant or any other patient. Having examined the legislative history of the regulations and their parent statute, we are inclined to agree with the People regarding their overall purpose. But it is equally clear that regulation 2.19 is a broad prohibition of the enrollment of informants in drug abuse programs for the purpose of criminal investigations of other enrollees.

Regulation 2.19 flatly prohibits enrollment of informants in drug abuse treatment programs. (42 C.F.R. § 2.19 (b) (1).) Thus the only remaining pertinent inquiry in this respect is whether Lancaster must be considered an informant within the definition of that word given in 42 Code of Federal Regulations section 2.19 (a) (2).

"The term 'informant' means a person who, at the request of a Federal, State, or local law enforcement or investigative agency or officer, carries on observation of one or more persons enrolled in or employed by a program in which he is enrolled or employed, for the purpose of reporting to such agency or officer information concerning such persons which he obtains as a result of such observation subsequent to such request." Lancaster was known to be an enrollee at the clinic. He was requested to make a drug purchase from petitioner, another known enrollee at the clinic, and was equipped with a transmitting device in order that deputies could overhear his conversation with petitioner. We are convinced that this constitutes "observation" of another enrollee in order to obtain "information" within the meaning of the regulation. Therefore, we conclude that the Santa Barbara County Sheriff violated 42 Code of Federal Regulations section 2.19 when his deputies instructed Lancaster to make a drug purchase from petitioner.[5]

[5]The statement of the regulation's basis and purpose supports our broad interpretation of its prohibition. "[T]he *presence* in a treatment program of . . . informants can have a devastating effect on the program's morale and therapeutic effectiveness." (42 C.F.R. § 2.19-1 (a) (italics added).) Comments received from drug abuse program officials after the regulations were proposed strongly supported this prohibition for the same reason. Indeed some of these persons condemned even the limited authorization for informants contained in the regulations. (See 42 C.F.R. § 2.67 (enrollee—informant allowed by court order to investigate criminal conduct by program employee).)

## IV. *Suppression of Evidence Obtained by Informant*

█ The People assert that even if the regulation was violated, suppression of the evidence obtained thereby is an inappropriate sanction. We agree with this assertion.

█ In a criminal proceeding, suppression of evidence is required only when such evidence has been obtained as a result of deprivation of constitutional rights, transgression of statutes embodying constitutional standards or where specifically required by statute. (*People* v. *Adams,* 59 Cal.App.3d 559, 566 [131 Cal.Rptr. 190]; *People* v. *Rawlings,* 42 Cal.App.3d 952, 956 [117 Cal.Rptr. 651]; *People* v. *Brannon, supra,* 32 Cal.App.3d at p. 975.)

█ As we have stated earlier, any constitutional expectation of privacy must be both personally held and objectively reasonable. (See *Jacobs* v. *Superior Court, supra,* 36 Cal.App.3d at pp. 493-494.) Nothing in the record before us indicates any awareness on petitioner's part of the existence of the federal statute and regulation. (Cf. *People* v. *Kosoff,* 34 Cal.App.3d 920, 932 [110 Cal.Rptr. 391].) Therefore, we are left only with the question of whether the pattern of federal law in this area, by itself, mandates suppression of evidence obtained as a result of its violation.

While 21 United States Code section 1175 does command suppression of any "records" not obtained in compliance with its provisions (and therefore also its regulations) (see 21 U.S.C. § 1175 (c)), we do not conclude that any of the evidence obtained by Lancaster can properly be considered such a record in view of the purpose of the statute and the regulations.[6]

21 United States Code section 1175 grew out of earlier federal provisions protecting the confidentiality of "[r]ecords of the identity, diagnosis, prognosis or treatment" of any drug and alcohol abuse patient. (See Comprehensive Drug Abuse, Prevention & Control Act of 1970,

---

[6]Given the apparent broad application of regulation 2.19, our conclusion against suppression avoids many nonsensical results. For example, any drug purchase by Lancaster from any other clinic enrollee—wherever and whenever occurring—probably would violate regulation 2.19. Yet it is difficult to see what confidentiality purpose would be served in suppressing evidence of such transactions.

Pub. L. No. 91-513, 84 Stat. 1241, 42 U.S.C. § 242a (a) and Comprehensive Alcohol Abuse and Alcohol Prevention, Treatment & Rehabilitation Act of 1970, Pub. L. No. 91-616, 84 Stat. 1853, 42 U.S.C. § 4582.) In emphasizing the importance of section 1175, the conference committee stated that its concern was with public disclosure of the fact of drug abuse or a record of treatment. (See 1972 U.S. Code Cong. & Admin. News, at p. 2072.) At the time the section was amended, Congressman Staggers, House manager of the legislation, stated that the forthcoming regulation would try to resolve conflicts between the interests of research, audit and evaluation on the one hand and privacy and patient-clinician confidentiality on the other. (See Cong. Rec., at H3563.(daily ed. May 6, 1974).) None of these remarks express concern about voluntary disclosures by patient-enrollees, even to fellow patient-enrollees who are informants, so long as the facts are unrelated to their involvement in a drug abuse program.

The history of 42 Code of Federal Regulations section 2.19 is not in conflict with this conclusion. Originally, and in several amendments, the regulations adopted pursuant to 21 United States Code section 1175 did not deal with informants at all. (See 38 Fed. Reg. 26111 (Sept. 24, 1973); 38 Fed. Reg. 33744 (Dec. 6, 1973); 39 Fed. Reg. 30426 (Aug. 22, 1974).) Even after the informant section was added, the comments to the regulation stressed that there was no intention to make the drug abuse prevention programs sanctuaries and that it was the informant's function vis-à-vis personnel and fellow patients which controlled the propriety of his conduct.[7] (See 2.19-1 (e) and (f).)

We believe that regulation 2.19's purpose is the same as that of the parent legislation and the remaining regulations: the protection of patient records and related information. The regulation's broad prohibition on informant-enrollees is merely the chosen method of protecting

---

[7]According to letters received by the office promulgating the regulations, the informant ban was largely prompted by an incident in a Baltimore drug abuse agency. Several agency employees were arrested for violation of drug laws partially on the basis of information gathered by a state police undercover agent who spent time at the agency. When it was revealed that the agent had access to and read some of the agency's confidential records, state officials decided thereafter to ban the use of such agents in any drug abuse program. News accounts of this incident, however, make it clear that the gravamen of the undercover agent threat was access to records rather than mere presence. (See Baltimore News American (July 27, 1974) and Baltimore Evening Sun (July 27. 1974).)

that confidentiality from informants.[8] Nothing in our conclusion should be interpreted as approving or in any way sanctioning the use of an enrollee-informant vis-à-vis other enrollees.[9] But no purpose would be served by the suppression of evidence obtained by Lancaster because although his presence in the program was a violation of the regulation, he did not obtain from petitioner any information intended to be protected by federal law.

## DISPOSITION

The petition for a peremptory writ of mandate is denied and the alternative writ discharged.

Ford, P. J., and Potter, J., concurred.

---

[8]Letters from drug abuse program officials, commenting on the regulations, stress another reason why a total ban on informants is necessary even though the ultimate goal is simply record confidentiality. Given the suspicious and antagonistic attitude of many program enrollees, most would not believe assurances that enrollee-informants would not also have access to all patient records and information developed by a drug abuse program.

[9]We do not think suppression of evidence is the only means of preventing future clinic enrollee-informants. Violation of the regulations is punishable by a fine of not more than $500 for the first offense and not more than $5,000 for each subsequent offense. (42 C.F.R. § 2.14.) The federal government and the drug abuse programs themselves would have an interest independent from—and perhaps more appealing than—petitioner's in vigorously seeking such fines.