(617 P.2d 1265)
No. 51,318

STATE OF KANSAS, *Appellee,* v. DANIEL G. KELEHER, *Appellant.*

Opinion filed October 3, 1980.

*Harold E. Flaigle* of Clausing, Wilson, Wilson & Flaigle, P.A., of Wichita, for the appellant.

*Ronald D. DeMoss* and *Stuart W. Gribble,* assistant district attorneys, *Vern Miller,* district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before FOTH, C.J., REES, J., and HARMAN, C.J. Retired, sitting by designation.

HARMAN, C.J. Retired: This is an appeal from convictions on five drug counts. The principal issue is whether the trial court erred in not suppressing certain evidence on the ground it was obtained in violation of federal regulations applicable to methadone treatment programs administered by the erstwhile Secretary of Health, Education and Welfare.

In January, 1977, Randy Peak and his wife Jana agreed with a vice officer, Detective Paul Bierhaus of the Sedgwick County sheriff's department, to become informants for the purpose of making controlled buys of drugs. Apparently the Peaks were acting voluntarily and without any promises or remuneration. They suggested defendant-appellant Daniel G. Keleher as a pos-

sible drug source. At all pertinent times, appellant Keleher and the Peaks were enrolled or participating in the federal methadone program in Wichita.

On March 13, 1977, the first of a series of drug sales by appellant to the Peaks, while under surveillance, occurred at a house in Wichita where appellant resided. After more sales under similar circumstances, a search warrant was secured for the residence pursuant to which certain items were seized. Appellant was arrested during the search and was charged with eight counts of illegal drug activity.

Prior to impaneling the jury, appellant moved to suppress the Peaks' testimony and the physical evidence obtained through the search warrant on the ground that use of the Peaks as informants violated federal regulations prohibiting law enforcement use of informants within a federally-funded methadone program. The motion was denied, trial proceeded, and appellant ultimately stood convicted on five of the eight counts with which he was charged. This appeal ensued.

The statute underlying the regulation in question is the Drug Abuse Office and Treatment Act of 1972, as amended, 21 U.S.C. § 1175, which provides in pertinent part:

"(a)   Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e) of this section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section."

"(c)   Except as authorized by a court order granted under subsection (b)(2)(C) of this section, no record referred to in subsection (a) of this section may be used to initiate or substantiate any criminal charges against a patient or to conduct any investigation of a patient."

"(f)   Any person who violates any provision of this section or any regulation issued pursuant to this section shall be fined not more than $500 in the case of a first offense, and not more than $5,000 in the case of each subsequent offense."

"(g)   Except as provided in subsection (h) of this section, the Secretary of Health, Education, and Welfare, after consultation with the Administrator of Veterans' Affairs and the heads of other Federal departments and agencies substantially affected thereby, shall prescribe regulations to carry out the purposes of this section. These regulations may contain such definitions, and may provide for such safeguards and procedures, including procedures and criteria for the issuance and scope of orders under subsection (b)(2)(C) of this section, as in the judgment of the Secretary are necessary or proper to effectuate the purposes of

this section, to prevent circumvention or evasion thereof, or to facilitate compliance therewith."

The regulation promulgated by the Secretary of HEW pursuant to (g) above, upon which appellant relies, is as follows:

"(a) *Definitions.* As used in this section. § 2.19-1, and §§ 2.67 and 2.67-1, —

"(1) The term 'undercover agent' means a member of any Federal, State, or local law enforcement or investigative agency whose identity as such is concealed from either the patients or personnel of a program in which he enrolls or attempts to enroll.

"(2) The term 'informant' means a person who, at the request of a Federal, State, or local law enforcement or investigative agency or officer, carries on observation of one or more persons enrolled in or employed by a program in which he is enrolled or employed, for the purpose of reporting to such agency or officer information concerning such persons which he obtains as a result of such observation subsequent to such request.

"(b) *General prohibition.* Except as otherwise provided in paragraph (c) of this section, or as specifically authorized by a court order granted under § 2.67 —

"(1) No undercover agent or informant may be employed by or enrolled in any alcohol or drug abuse treatment program;

"(2) No supervisor or other person having authority over an undercover agent may knowingly permit such agent to be or remain employed by or enrolled in any such program; and

"(3) No law enforcement or investigative officer may recruit or retain an informant with respect to such a program.

"(c) *Exceptions.* The enrollment of a law enforcement officer in a treatment program shall not be deemed a violation of this section if (1) such enrollment is solely for the purpose of enabling the officer to obtain treatment for his own abuse of alcohol or drugs, and (2) his status as a law enforcement officer is known to the program director." 42 C.F.R. § 2.19.

The statute and regulation have come under judicial scrutiny at least three times.

In *United States v. Coffman,* 567 F.2d 960 (10th Cir. 1977), the defendant made an unsolicited offer to sell heroin to one Barnette, both being enrolled in the same methadone treatment program. Barnette passed this information on to police and, at their request, made the purchase which resulted in defendant's conviction. During this period, Barnette was acting as a local police informant but only to help in recovering stolen property and not for ferreting out drug violations by his fellow enrollees. The court concluded Barnette was not an informant as contemplated by the regulation as he was first approached by the defendant; he was not recruited by police with any prearranged purpose respecting the treatment program or any enrollee; and his status was that of an ordinary witness and not an informant. On this reasoning, no

violation of § 2.19 was found. In determining the merits of defendant's assertion of police misconduct, the court examined portions of the Secretary's official comments as to the basis and purpose of the regulation, the rationale for a complete ban on informants being stated in 42 C.F.R. § 2.19-1 (a), as follows:

"In many instances, persons who are patients in treatment programs are making their first tentative efforts toward re-integration into productive society. They may be both vulnerable and suspicious, and the presence in a treatment program of undercover law enforcement agents or informants can have a devastating effect on the program's morale and therapeutic effectiveness. Moreover, *it would appear that the purpose of such agents or informants may be to obtain precisely the type of personal information which might be revealed by inspection of counselor notes and other patient records maintained by the program.* Thus, the placing of an undercover agent or informant in a program, either as a patient or as an employee, would appear to be contrary to the purposes for which the provisions of law authorizing this part were enacted, and properly subject to prohibition under regulations expressly authorized to carry out those purposes." 567 F.2d at 962; emphasis added.

The *Coffman* court made this comment:

"The legislative history of 21 U.S.C.A. § 1175 and the expository sections of the regulations make it clear that neither Congress nor the Secretary intended that hospitals administering the methadone treatment program should become sanctuaries for drug abusers who violate the law while enrolled in the program." 567 F.2d at 962.

While the facts in *Coffman* were dissimilar to those in the case at bar, two other cases contain virtually the same situations as here, with emphasis again that the thrust of the regulation is protection of information contained in counselor notes and other patient records maintained by the treatment program.

*Armenta v. Superior Court,* 61 Cal. App. 3d 584, 132 Cal. Rptr. 586 (1976), dealt with the following facts: One Lancaster, an enrollee in a methadone treatment program during the time in question, represented to police he could set up a series of drug buys from a number of his fellow enrollees in the program, including Armenta. Lancaster, monitored by hidden transmitting and recording equipment, purchased heroin from Armenta, who was then arrested and charged with sale of heroin.

The *Armenta* court considered the validity of regulation § 2.19, a point *Coffman* declined to address as no violation was found. Although the State in the case at bar virtually concedes the regulation is valid, a review of its analysis in *Armenta* may be useful. The court noted that the informant prohibition is some-

what tangential to the stated purpose of 21 U.S.C. § 1175 (a), that is, maintaining the confidentiality of enrollees' records kept by the clinics. The opinion iterates the rule that regulations duly promulgated under the enabling legislation will be upheld so long as they are reasonably related to the purposes of the original legislation. 61 Cal. App. 3d at 592 (citing *Mourning v. Family Publications Service,* 411 U.S. 356, 369, 36 L.Ed.2d 318, 93 S.Ct. 1652 [1973]). It was the court's opinion that the congressional grant or regulatory power conferred upon the Secretary by 21 U.S.C. § 1175 (g) employs terms "deliberately more expansive" than the traditional language allowing promulgation of "such rules and regulations as may be necessary . . . ." 61 Cal. App. 3d at 592. This would appear a correct conclusion in that subdivision (g) employs not only the "necessary and proper" phrase, but additionally allows promulgation of rules "to prevent circumvention or evasion . . . or to facilitate compliance [with the statute]." On this point, the court restated that regulatory latitude is especially tolerated when the congressional legislation does not purport to be exhaustive so far as the evils to be remedied are concerned. 61 Cal. App. 3d at 592 (citing *American Trucking Assns. v. U.S.,* 344 U.S. 298, 309-310, 97 L.Ed. 337, 73 S.Ct. 307 [1953]).

The court in *Armenta* thereon held that the regulation's total ban on "informants" within a treatment program was within the reasonable and expert judgment of the Secretary in light of the purposely broad discretion allowed in deciding what type of rules would best insure the confidentiality of clinic records—this in view of the official comments' concern that the frequent purpose of an "informant" is to obtain the type of personal information contained in patient records. 61 Cal. App. 3d at 592. See 42 C.F.R. § 2.19-1 (a) (quoted previously herein).

The court pointed out that construction of legislative intent provided by an agency charged with administration of the legislation is entitled to considerable weight by the courts. 61 Cal. App. 3d at 592 (citing *Lewis v. Martin,* 397 U.S. 552, 559, 25 L.Ed.2d 561, 90 S.Ct. 1282 [1970]; *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 23 L.Ed.2d 371, 89 S.Ct. 1794 [1969]).

The court then agreed with the prosecution's view that the regulation in question was aimed toward maintaining confidentiality of records only, but did not agree with the concomitant

assertion that as Lancaster was not recruited from the treatment program to discover the contents of clinical records, there was no violation of § 2.19. The court ruled that Lancaster was an "informant" as defined by the regulation and, as the same does contain a broad prohibition of informants in drug abuse programs for the purpose of criminal investigations of other enrollees, the regulation had indeed been violated. 61 Cal. App. 3d at 595. See 42 C.F.R. §§ 2.19 (a)(2), 2.19-1 (e), (f).

Violation of the "informant" prohibition regulation, however, was not held to mandate suppression of the evidence of the illicit sale to Lancaster. The court reasoned that the purpose of 21 U.S.C. § 1175 is to suppress the use of "records" only, the broad ban on informants being merely the method of enforcing and insuring that purpose; hence, no purpose of the statute would be served by suppression of the described evidence as such was not intended to be protected, though a violation of the regulation did occur. The court stated that violation of the regulation itself invoked penalties stated in 21 U.S.C. § 1175 (f), and this remedy alone was subject to enforcement. 61 Cal. App. 3d at 595-596.

The most recent case dealing with the statute and regulation to come to our attention is *State v. Bethea,* 35 N.C. App. 512, 241 S.E.2d 869 (1978), which adopts on a wholesale basis the reasoning and result stated in *Armenta* under substantially similar facts.

We similarly are satisfied with the *Armenta* decision on the facts here and conclude the trial court properly denied the suppression motion. The Peaks, although informants within the meaning of the regulation, obtained from appellant no information intended to be protected by federal law. No confidential records or notes were used or involved. Suppression of evidence obtained through their undercover work would serve no purpose and is inappropriate. 42 C.F.R. § 2.19-1 further states:

"(e) . . . As the definition of an informant is intended to make clear . . . it is his function vis-a-vis personnel and fellow patients in the program in which he is enrolled which is controlling, and not his relationship, *per se,* with an investigative agency.

"(f) . . . In one of the comments received on § 2.19 as proposed, it was urged that treatment programs should be considered as sanctuaries, but such a result was explicitly disclaimed in the initial publication of the previous regulations (37 FR 24636)."

These comments stress that it is the informant's function vis-a-vis

personnel and fellow patients which controls the propriety of his conduct and that there is no intention to make the drug treatment programs sanctuaries for drug abusers.

Appellant next urges that, because he was aware of the regulation prohibiting informants in the program, he had a personal expectation of privacy protected by the Fourth Amendment to the federal Constitution and Section 15 of the Kansas Bill of Rights, which was violated by the seizure of the evidence he sought to suppress. No such contention was raised at trial level. Where constitutional grounds for reversal of a judgment are asserted for the first time on appeal, they are not properly before the court for review. *State v. Berry*, 223 Kan. 566, Syl. ¶ 2, 575 P.2d 543 (1978). If the point were before us, it would avail appellant nothing. Use of an informant or undercover agent does not violate the right of privacy where the accused has voluntarily invited the informant to be a witness or party to the illicit transaction or conversation. *Lewis v. United States*, 385 U.S. 206, 209-211, 17 L.Ed.2d 312, 87 S.Ct. 424 (1966). See also *State v. Jordan*, 220 Kan. 110, 115, 551 P.2d 773 (1976).

Finally, appellant urges the court erred in admitting into evidence large quantities of beakers, glasses, and laboratory equipment which were seized at his home, along with a quantity of marijuana. The contention has no merit. At oral argument, appellant's counsel conceded that the items were relevant, as indeed they were, on count five of the charge against appellant, sale of hash oil. The items were suitable for the manufacture of hash oil from the base substance of marijuana. A residue of hash oil was found in some of them. Appellant narrows his complaint now— the prosecution overdid it by introducing all the items seized, which may have amounted to eight or ten boxes. The volume of the evidence didn't diminish its relevance. It is not shown how prejudice resulted and we see none. Indeed, appellant was acquitted by the jury on count five.

The judgment is affirmed.