STATE of Wisconsin, Plaintiff-Appellant,

v.

John G. HENRY, Defendant-Respondent.

Court of Appeals

*No. 82-1230-CR. Submitted on briefs January 4, 1983.—
Decided February 16, 1983.*
(Also reported in 332 N.W.2d 88.)

For the plaintiff-appellant the cause was submitted on the brief of *Patrick C. Haughney*, assistant district attorney, of Waukesha.

For the defendant-respondent the cause was submitted on the brief of *Michael J. Gross* of *Hippenmeyer, Reilly, Arenz, Molter, Bode & Gross, S.C.* of Waukesha.

Before Voss, P.J., Brown and Scott, JJ.

VOSS, P.J. The State of Wisconsin appeals from an order of the trial court that suppressed John Henry's blood alcohol test results. The state had attempted to use

these test results in order to prove that Henry had been operating a motor vehicle while intoxicated, contrary to sec. 346.63, Stats. (1979-80). The issue raised on appeal is whether the results of a blood alcohol test, taken in conformity with the implied consent law, sec. 343.305, Stats. (1979-80), are suppressible when a person orally consents but does not sign a medical informed consent disclosure form as discussed in secs. 146.81 and 146.82, Stats. (1979-80). We hold that under these circumstances, the blood alcohol test results should not be suppressed. Accordingly, we reverse and remand this case for further proceedings consistent with this decision.

John Henry was arrested for driving an automobile while intoxicated, in violation of sec. 346.63, Stats. (1979-80),[1] on February 13, 1982. The arrest was made by Waukesha County Sheriff's Deputy Richard Koleff at the scene of an automobile accident in Wales, Wisconsin. Henry had been involved in this accident. Henry was then taken to Waukesha Memorial Hospital for a blood alcohol test, pursuant to the implied consent statute, sec. 343.305(1), Stats. (1979-80).[2] At the hospital,

---

[1] Section 346.63, Stats. (1979-80), reads in pertinent part:

(1) No person may drive or operate a motor vehicle while under the influence of an intoxicant or a controlled substance.

. . . .

(4) A person whose blood contains 0.1% or more by weight of alcohol is under the influence of an intoxicant for purposes of this section. Notwithstanding s. 885.235(1)(c), a chemical analysis of a person's blood, breath or urine which has been admitted into evidence and which shows that there was 0.1% or more by weight of alcohol in the person's blood is sufficient evidence, without corroborating physical evidence, on which to base a finding that the person's blood contained 0.1% or more by weight of alcohol.

[2] Section 343.305(1), Stats. (1979-80), states:

343.305 Revocation of license on refusal to submit to tests. (1) Any person who drives or operates a motor vehicle upon the public highways of this state, or in those areas enumerated in s.

the deputy reviewed the blood test consent form with Henry and, by reading from a standard state form,[3] informed Henry of his statutory rights under sec. 343.305 (3) (a).[4] After being advised of his rights, Henry orally

346.61, shall be deemed to have given consent to tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood, of alcohol or controlled substances when requested to do so by a law enforcement officer under sub. (2). Any such test shall be administered upon the request of a law enforcement officer.

[3] The form is entitled "Informing the Accused (343.305(3) (a)) ;" relevant parts state:

A law enforcement officer requesting a person to take a test under s. 343.305(2) shall, at the time of the request and prior to administering any such test, inform the person:

1. You are deemed under Wisconsin's Implied Consent Law, s. 343.305, to have consented to tests of your breath, blood or urine for the purpose of determining the presence or quantity of alcohol or controlled substances in your blood.
2. If you refuse to submit to any such tests, your operating privilege will be revoked for a period of not less than six months nor more than one year as provided under s. 343.305 (9).
3. You may refuse to submit to the preliminary breath test authorized under s. 343.305(2) (a) without being subject to revocation if, after arrest, you consent to take a test as provided under s. 343.305(2) (b).
4. In addition to the test or tests you have submitted to at the request of a law enforcement officer, you may request the alternate test the department is prepared to administer, or at your own expense, reasonable opportunity to have any qualified person of your own choosing administer a chemical test for the purpose specified under s. 343.305(1).
5. Will you submit to a preliminary test of your breath? ☐ Yes ☐ No
6. Will you submit to an evidentiary chemical test of your

_____. (breath, blood, urine) ☐ Yes ☐ No

[4] Section 343.305(3) (a), Stats. (1979–80), reads in pertinent part:

agreed to have a blood sample withdrawn; however, he would not sign the written consent form. The blood sample was drawn by a hospital technician using a kit provided by the state and was witnessed by the deputy. The technician gave the sample to the deputy, who then mailed it to the State Laboratory of Hygiene for analysis.

Subsequently, Henry filed a motion to suppress the blood test results on the ground that a patient-client medical release disclosure form was not signed, as defined in secs. 146.81[5] and 146.82(1),[6] Stats. (1979–80).

(3) (a) A law enforcement officer requesting a person to take a test under sub. (2) shall, at the time of the request and prior to the administration of any such test, inform the person:

1. That he or she is deemed to have consented to tests under sub. (1);

2. That if he or she refuses to submit to any such test, except as permitted under sub. (2) (a), his or her operating privilege shall be revoked for not less than 6 months nor more than one year under sub. (9); and

3. That in addition to the tests designated by the law enforcement agency under sub. (1), he or she may have an additional test under sub. (5).

[5] Portions of sec. 146.81, Stats. (1979–80), applicable to this case, state:

146.81 Definitions. In ss. 146.81 to 146.83:

(1) "Health care provider" means a nurse registered or licensed under ch. 441, . . . a partnership thereof, a corporation thereof that provides health care services, an operational cooperative sickness care plan organized under ss. 185.981 to 185.985 that directly provides services through salaried employees in its own facility, or an inpatient health care facility as defined in s. 140.85(1).

(2) "Informed consent" means written consent to the disclosure of information from patient health care records to an individual, agency or organization containing the name of the patient whose record is being disclosed, the purpose of the disclosure, . . . the signature of the patient or the person authorized by the patient, the date on which the consent is signed and the time period during which the consent is effective.

(3) "Patient" means a person who receives health care services from a health care provider.

The trial court suppressed the results of Henry's blood test based on its interpretation that sec. 146.81(2) requires a written consent form to be signed first before the disclosure of these results.

The trial court concluded that the doctor-patient privilege covered a person suspected of driving while intoxicated and subjected to medical testing under sec. 343.305, Stats. (1979–80). This court, however, believes that the doctor-patient privilege expressed in secs. 146.81 and 146.82, Stats. (1979–80), cannot be correctly construed to apply in cases such as this one. Thus, we find that the trial court erroneously relied on the doctor-patient privilege in rendering its decision.

While we recognize that the "doctor-patient" privilege has in recent times been expanded to include other persons or businesses rendering health care, we also note that it still has certain boundaries. One such boundary is applicable here. When Henry was taken to the hospital, it was a police officer acting under statutory authority who requested that the hospital draw a sample of Henry's blood. We feel that it is an important distinction that a "health care provider" did not order this medical procedure. Because a health care provider did not prescribe this test, we do not believe the doctor-patient privilege is applicable.

Another crucial factor which we think distinguishes and takes this case out of the realm of the doctor-patient

(4) "Patient health care records" means all records related to the health of a patient prepared by or under the supervision of a health care provider, but not those records subject to s. 51.30.

[6] Section 146.82(1), Stats. (1979–80), reads in pertinent part: 146.82 Confidentiality of patient health care records. (1) CONFIDENTIALITY. All patient health care records shall remain confidential. Patient health care records may be released only to the persons designated in this section or to other persons with the informed consent of the patient or of a person authorized by the patient.

privilege is that Henry cannot be classified as a "patient" as defined by sec. 146.81(3), Stats. (1979–80). This section defines a "patient" as a person who receives health care services from a health care provider. The problem we have with this definition is with the words "health care services." This court cannot logically say that the drawing of blood, to test whether he had been driving while intoxicated, comes under the heading of "health care services." Specifically, we have trouble saying that drawing blood and testing it in order to determine only the alcohol content is really "health *care*," as envisioned by the legislature. (Emphasis added.) The blood in this instance was not drawn from Henry for "health care" purposes; rather, it was ordered under the authority of the state of Wisconsin with an evidentiary purpose in mind. We get this impression for several reasons.

First, the Wisconsin legislature has enacted a stringent operating while intoxicated law which is designed to achieve the goal of maximum highway safety in this state. This law was to achieve maximum safety by first discouraging individuals from initially getting behind the wheel of a motor vehicle while under the influence of alcohol and, secondly, by facilitating the removal of the intoxicated drivers from Wisconsin highways if they do drive while intoxicated. Wisconsin appellate courts have historically construed these types of laws liberally so as to effectuate the legislative purpose which led to their passage. In *State v. Neitzel,* 95 Wis. 2d 191, 193–94, 289 N.W.2d 828, 830 (1980), our supreme court recognized that removing intoxicated drivers from the highways was one of the objectives of the implied consent law (sec. 343.305, Stats. (1979–80)):

Because the clear policy of the statute is to facilitate the identification of drunken drivers and their removal

from the highways, the statute must be construed to further the legislative purpose.

In *State v. Pawlow,* 98 Wis. 2d 703, 704–05, 298 N.W.2d 220, 221 (Ct. App. 1980), this court stated:

Wisconsin's implied consent statute must be construed as a whole in light of its policy, "to facilitate the taking of tests for intoxication *and not to inhibit the ability of the state to remove drunken drivers from the highway." Scales v. State,* 64 Wis. 2d 485, 494, 219 N.W.2d 286, 292 (1974). [Emphasis in original.]

As can be seen, there is a strong legislative and judicial policy to combat the problem of having intoxicated drivers on our state's highways.

Secondly, the time sequence of when both statutes were enacted is an influencing factor. Section 343.305, Stats. (1979–80), was created by ch. 383, Laws of 1969. Subsequently, secs. 146.81 through 146.83, Stats. (1979–80), were created by ch. 221, Laws of 1979. Under the law set out in *Mack v. Joint School District No. 3,* 92 Wis. 2d 476, 489–90, 285 N.W.2d 604, 610 (1979), the legislature was presumed to have enacted secs. 146.81 and 146.82 in ch. 221, Laws of 1979, with full knowledge of all existing laws, including sec. 343.305. There is nothing in secs. 146.81 or 146.82 which indicates that the legislature in any way restricted or even intended to restrict the implied consent contained in sec. 343.305. In the absence of any express provision repealing any portion of sec. 343.305, the implied consent law should remain as it existed prior to the enactment of secs. 146.81 and 146.82.

Thirdly, we believe that two sections of the operating while intoxicated statutes specifically address themselves to the disclosure issue. Section 343.305(4), Stats. (1979–80), reads:

(4) The person who performs a chemical analysis of breath, blood or urine under sub. (2) *shall* prepare a written report of the findings of the test which includes the identification of the law enforcement officer or person upon whose request the test was administered. He or she *shall* promptly transmit a copy thereof to the department, the law enforcement agency and the person from whose breath, blood or urine the analysis was made. [Emphasis added.]

We interpret sec. 343.305 (4) to mean that once a person has consented and has not refused to submit to a test, the results are automatically required to be disclosed to the department and to law enforcement agencies whether or not written consent for disclosure was given.

If secs. 146.81 and 146.82, Stats. (1979–80), were interpreted as requiring written consent before any medical test results could be released, the legislative intent to rid the state highways of intoxicated drivers would seriously be thwarted. If such an interpretation were permitted, a person tested could simply analyze the test results and decide whether or not they were favorable. If the results were unfavorable (blood alcohol level was above 0.1%), then he could simply refuse to sign the written consent form. This would create an absurd situation. Because there is no sanction for refusals to consent to disclosure of test results, only refusals to consent to the taking of tests,[7] the person would be able to effec-

---

[7] Sanctions for refusing to submit to the testing are discussed in sec. 343.305 (3) (a) 2. and (b), Stats. (1979–80). Section 343.-305 (3) (a) 2. reads:

2. That if he or she refuses to submit to any such test, except as permitted under sub. (2) (a), his or her operating privilege shall be revoked for not less than 6 months nor more than one year under sub. (9) ; and

. . . .

Section 343.305 (3) (b) reads in pertinent part:

(b) If the person refuses the request of a law enforcement officer to submit to a test under sub. (2), the officer shall immedi-

tively bar prosecution for both his intoxication and his refusal. Clearly, this was not the intent that the state legislature had in mind when it enacted sec. 343.305, Stats. (1979–80), or the subsequent secs. 146.81 and 146.82.

Another section of the operating while intoxicated statutes also deals with the disclosure of the test results. Section 343.305(7), Stats. (1979–80), provides that the test results obtained are admissible at trial on the issue of whether the person tested was under the influence of an intoxicant at the time. Section 343.305(7) states:

(7) At the trial of any civil or criminal action or proceeding arising out of the acts committed by a person alleged to have been driving or operating a motor vehicle while under the influence of an intoxicant or a controlled substance, the results of a test administered under sub. (2) (b) or (c) or (5) are admissible on the issue of whether the person was under the influence of an intoxicant or a controlled substance. Test results shall be given the effect required under s. 885.235 and, if applicable, s. 346.63(4).

Thus, by statute, once a driver has consented to the taking of tests to determine his blood alcohol level, by virtue of sec. 343.305(1), Stats. (1979–80), or has failed to refuse the taking of these tests under sec. 343.305(3) (b), the laws mandate that the results be forwarded to the state and law enforcement authorities. Furthermore, there is a statutory provision that these results are admissible at trial on the issue of whether or not the driver was under the influence of an intoxicant.

In the present case, Henry, having both orally consented and consented by law under sec. 343.305(1), Stats.

ately prepare a notice of intent to revoke the person's operating privilege under sub. (9) and give a copy of the notice to the person.

(1979–80), to having his blood alcohol level checked by medical testing, is barred by law from preventing the disclosure of the test results under sec. 343.305(4) and the admission of these results at trial under sec. 343.305(7). Accordingly, we reverse the trial court's decision suppressing Henry's test results and remand this case for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for proceedings consistent with this opinion.