JOHN D. OSINGA, District Attorney Portage County
Hospitals which receive federal funding for alcohol and drug abuse treatment programs are required by federal law to preserve the confidentiality of patient records relating to such programs. The Wisconsin Implied Consent Law, section 343.305, Stats., requires a hospital to comply with the request of a law enforcement officer to cooperate in the administration of chemical tests to determine the presence of intoxicants in the blood of a person under arrest. A blood test is one of the chemical tests permitted by statute and that procedure begins with the assistance of local medical personnel. I understand that the person under arrest is normally taken to a local hospital where a blood sample is withdrawn. That sample is then given to the arresting officer who transmits it to the Wisconsin Laboratory of Hygiene for analysis. You indicate that in certain circumstances hospitals have withdrawn a blood sample as requested but have refused to provide it to the arresting officer on the theory that to do so would be to reveal a patient record in violation of federal law. It is my opinion that the federal law requiring confidentiality of patient records has no application to the taking of a blood sample pursuant to section343.305. Federal law does not require nor does it justify a refusal by a hospital to provide to the arresting officer the blood sample taken.
The Public Health Service Act, Pub.L. 98-24, 42 U.S.C. § 290dd-3
(formerly 42 U.S.C. § 4582) restricts disclosure of certain patient records:
 (a) Disclosure authorization. Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained *Page 46 
in connection with the performance of any program or activity relating to alcoholism or alcohol abuse education, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e), be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.
Such records may be disclosed upon the written consent of the patient, 42 U.S.C. § 290dd-3(b)(1), or pursuant to a court order based upon a showing of good cause, 42 U.S.C. § 290dd-3(b)(2)(C). Moreover, the federal statute prohibits the use of such records in a criminal prosecution except as authorized by court order, 42 U.S.C. § 290dd-3(c). The Federal Drug Abuse Office and Treatment Act of 1972, 21 U.S.C. § 1175, enacts essentially an identical requirement of confidentiality with respect to patient records maintained in connection with drug abuse programs which receive federal funds.
The secretary of Health and Human Services has issued the following regulations intended to interpret the terms of the foregoing statutory requirements. 42 C.F.R. § 2.11 (1982) provides:
 (i) Patient. The term "patient" means any individual (whether referred to as a patient, client, or otherwise) who has applied for or been given diagnosis or treatment for drug abuse or alcohol abuse and includes any individual who, after arrest on a criminal charge, is interviewed and/or tested in connection with drug or alcohol abuse preliminary to a determination as to eligibility to participate in a treatment or rehabilitation program.
. . . .
 (o) Records. The term "records" includes any information, whether recorded or not, relating to a patient, received or acquired in connection with the performance of any alcohol abuse or drug abuse prevention function, whether such receipt or acquisition is by a program, a qualified service organization, or any other person.
The foregoing definitions are extremely broad and one could argue that they expand the coverage of the law beyond that which is clearly indicated by the text of the federal statute. I should note that the above regulations are interpretive in nature rather than substantive, *Page 47 42 C.F.R. § 2.5(a) (1982) and 42 C.F.R. § 2.61-1(a) (1982). The regulations thus represent the legal interpretation of the secretary of Health and Human Services as to the meaning of the federal statutes. State v. Amoco Oil Co., 97 Wis.2d 226,241, 293 N.W.2d 487 (1980). That interpretation may well be persuasive but it does not have the binding effect of law which substantive regulations do have. General Electric Co. v. Gilbert,429 U.S. 125, 141 (1976); Swanson v. Health and Social ServicesDept., 105 Wis.2d 78, 88, 312 N.W.2d 833 (Ct.App. 1981).
I understand that the refusal to provide the blood sample has arisen in situations where hospital personnel believe that the arrested person may be eligible for participation in a drug or alcohol abuse treatment program. In such circumstances hospital personnel have retained the blood sample and demanded that the officer obtain the written consent of the arrested individual or a court order. That demand is, however, based upon what I believe are several fundamental misinterpretations of the applicable federal statutes and regulations.
The situation presented is that of an individual under arrest and in the custody of a law enforcement officer who is brought to the hospital in order that physical evidence, a blood sample, might safely be removed from his body. The purpose of the procedure is solely to preserve physical evidence which is subject to biological degradation. That limited procedure involves no testing or analysis, no treatment or rehabilitation.Cf. State v. Henry, 111 Wis.2d 650, 332 N.W.2d 88 (Ct.App. 1983). Any record created in the course of that procedure is not made "in connection with the performance of any program or activity" relating to drug or alcohol abuse treatment.
More importantly, the blood sample which is the focus of your inquiry is not in any sense a "record." It is simply physical evidence which is needed in order to conduct certain chemical testing. A report of the eventual chemical analysis of the blood sample would probably be a record as would be a description of the procedure by which the sample was taken. The arresting officer is not, however, concerned with records which the hospital may or may not prepare. The officer simply wishes to retain control of certain physical evidence in order to arrange for the chemical testing authorized by statute. The interpretive regulations issued by the secretary of Health and Human Services define "record" to include "any information . . . *Page 48 
received or acquired in connection with the performance of any alcohol abuse or drug abuse prevention function."42 C.F.R. § 2.11(o) (1982). Even under that expansive definition, however, the blood sample in question is not a "record." A record is that which describes something else. The blood sample describes nothing but is simply physical evidence which may in turn be described in a record. It is not itself a record within the meaning of the federal law and thus is not subject to the confidentiality requirement.
The definition of "patient" set out at 42 C.F.R. § 2.11(i) (1982), includes one who is interviewed or tested to determine eligibility to participate in a treatment program. That definition could conceivably extend to an individual brought to a hospital for the withdrawal of a blood sample where hospital personnel do initiate an interview or undertake other testing such as additional blood tests. Even if one accepted this anticipatory definition of "patient," however, that would still not bring the blood sample in question within the definition of "record" and thus would not impose the rule of confidentiality as to that sample.
There has been thus far limited judicial interpretation of the federal statutes in question and I am aware of no decision which considers the precise facts posed in your inquiry. In at least two decisions, however, state appellate courts have refused to extend the confidentiality requirement to information that arguably was within the broad definition of "record" set out at42 C.F.R. § 2.11(o) (1982). In the decision of State v.White, 169 Conn. 223, 363 A.2d 143 cert. denied, 423 U.S. 1025
(1975), the Connecticut Supreme Court considered a revocation of probation which had been based upon the appellant's failure to follow through in a drug treatment program. The appellant had been required, as a condition of probation, to enroll in a drug abuse treatment program and had done so initially. The court which had revoked the probation had done so after hearing the testimony of a staff member from that program who had advised probation authorities orally and in writing that the appellant had been absent from the program without permission. The Connecticut Supreme Court ruled that such information was not a "record" within the meaning of 21 U.S.C. § 1175 and thus was not subject to the confidentiality restrictions. White,363 A.2d at 150. In the decision of State v. Bethea, 35 N.C. App. 512,241 S.E.2d 869 (1978), the Court of Appeals of North Carolina reviewed a conviction *Page 49 
based upon evidence that the defendant had, within a drug treatment facility, obtained and sold methadone to a police informant. The evidence offered at trial included the methadone that had been sold and testimony that the substance had been poured from a bottle, the label of which identified both the defendant and his physician. The court of appeals rejected a challenge based upon the federal confidentiality requirement and ruled that the conviction was not based upon any "record" within the meaning of the federal law. It should be noted that the appellant in Bethea was a patient who was actively participating in a drug treatment program at the time the crime was committed. By contrast, the individual brought to a hospital for a blood test is only a "patient" by virtue of the questionably expansive interpretation set out at 42 C.F.R. § 2.11(i) (1982). In any event, the Bethea decision clearly indicates that neither the blood sample taken pursuant to section 343.305, nor a label identifying the source of that sample would be covered by the federal confidentiality requirement.
Presumably, the officer who receives the requested blood sample from the hospital employe will be able to offer competent testimony at trial describing the procedure by which the sample was taken and the subsequent chain of custody. In some situations, however, it may be necessary to subpoena the hospital employe in order to establish those facts. There exists substantial authority for the proposition that the federal confidentiality requirement does not apply to that which is observed by a staff member even when the observation occurs in the course of participating in a treatment program, State v.Keleher, 5 Kan. App. 2d 400, 617 P.2d 1265 (1980); Bethea; White. The federal confidentiality requirement clearly has no more application when the observation relates to something not part of a treatment program and when it involves one who only may later enter such a program. So long as the testimony to be elicited relates directly to the blood sample taken pursuant to section343.305, that testimony is not subject to the federal confidentiality requirement set out at 42 U.S.C. § 290dd-3
and 21 U.S.C. § 1175. By the same token, the foregoing federal statutes do not preclude the issuance of a subpoena to elicit testimony relating directly to the requested blood test.
The restriction upon disclosure of patient records set out in the foregoing federal statutes obviously is intended to encourage individuals to seek treatment and to protect those who do enter rehabilitation *Page 50 
programs. The restriction essentially speaks to the subjective intent of the individual needing treatment and attempts to encourage participation in a therapeutic program. That goal is not in any sense served by extending the confidentiality requirement to the factual situation posed in your inquiry. Arrest upon a criminal charge is what caused the individual to be at the hospital and the individual is at that point in the custody of an officer. In a legal sense, the individual has consented to the test procedure but that consent is clearly a product of the compulsion created by section 343.305. It cannot be said that the individual has freely chosen to accompany the arresting officer to the hospital. This situation is very different from that of an individual free to choose or to avoid a treatment program. The voluntary interest that the federal law seeks to encourage does not exist in this situation and thus there is no reason to invoke the confidentiality requirement.
The implied consent law seeks ultimately to deter alcohol and drug abuse at least with respect to the operation of motor vehicles. In a very real sense that goal is parallel to that of the federal confidentiality requirement. Both are intended, one by deterrent and the other by protection, to curb alcohol and drug abuse. The existence of the sanctions imposed by the Implied Consent Law serve to encourage an individual to seek precisely the type of treatment program that the federal law is intended to protect. It would be altogether inconsistent to interpret the federal requirement in a manner that would needlessly frustrate the legitimate, vital interest that the state has in preventing the use of a motor vehicle by one under the influence of an intoxicant.
The terms of the applicable federal statute, the interpretive regulations and the basic purpose of the law all indicate clearly that the taking of a blood sample pursuant to the Wisconsin Implied Consent Law is not a procedure in connection with the performance of a drug or alcohol abuse prevention function nor is the acquired blood sample itself a patient record. The confidentiality requirements set out in 42 U.S.C. § 290dd-3
and 21 U.S.C. § 1175 have no application to such a procedure.
BCL:DTF *Page 51