[No. A036986. First Dist., Div. Four. May 11, 1988.]

FRANCISCO ALARCON, Plaintiff and Appellant, v.
CORNELIUS MURPHY, Individually and as Chief of Police, etc., et
al., Defendants and Respondents.

**COUNSEL**

Tony Tamburello, Tamburello, Hanlon & Bresciani and John Houston Scott for Plaintiff and Appellant.

Louise H. Renne, City Attorney, Kimberly A. Reiley and Constance M. Menefee, Deputy City Attorneys, for Defendants and Respondents.

**OPINION**

**CHANNELL, J.**—Appellant Francisco Alarcon appeals from a summary judgment granted to respondents Cornelius Murphy, George Kowalski,

James Crowley, Herman W. Clark, William Fazio, and the City and County of San Francisco.[1] (Code Civ. Proc., § 437c, subd. (c).) He contends that police statements identifying him as a murder suspect before they had probable cause to arrest him for that crime violated his constitutional right to privacy. We affirm the judgment.

## I. FACTS

On September 22, 1984, the body of 15-year-old Theodore Gomez was found in San Francisco's Golden Gate Park. He had been bound with duct tape, sodomized, and stabbed to death. Investigating officers Herman W. Clark and James Crowley learned that Gomez was a runaway who had been engaging in acts of homosexual prostitution.

Two male juveniles told the officers that in the early morning hours of September 22 they had seen Gomez enter an orange/red jeep driven by a Latin male. One young man said that the Latin male had previously approached him, given him marijuana, and solicited him for sexual activity. A third juvenile told police that he had been to the Latin male's house, had been given marijuana, and had engaged in acts of oral copulation. He led the officers to Alarcon's San Jose Avenue home. An orange/red Toyota jeep parked in front of the house appeared to contain a roll of duct tape.

On September 26, police obtained an arrest warrant for Alarcon and a warrant to search his house and vehicle. His arrest was sought for lewd contact with a minor, oral copulation with a minor, and providing marijuana to a minor. (Health & Saf. Code, § 11361; Pen. Code, § 288, subds. (a), (c).) The affidavit supporting issuance of the search warrant outlined the facts of the Gomez case, including those leading police to suspect that Alarcon might be the murderer.

Alarcon was not at home when the warrants were executed. The day after an all-points bulletin was issued for his arrest, he surrendered to police and was questioned about his contact with Gomez. After consulting with Deputy District Attorney William Fazio, Officer Crowley told the press that Alarcon was the chief suspect in the Gomez case.[2]

On September 27, a KGO-TV news broadcast identified Alarcon as the chief suspect in the murder, as did newspaper articles. However, Alarcon

---

[1] For convenience, this opinion refers to all respondents as "the City."

[2] In his complaint, Alarcon alleged that the City made this statement, which the City admitted for purposes of the motion for summary judgment. On the merits, the City contends that its agents said only that Alarcon had been seen with Gomez the day of the murder, he had been arrested on other charges, he was being questioned about the murder, and he was cooperating with police.

was never charged with the murder, and the sex and marijuana charges were later dropped. Alarcon remained a suspect until October 23, when another person confessed to murdering Gomez. Respondents do not contend the police ever had probable cause to arrest Alarcon for the murder.

On March 18, 1985, Alarcon filed a complaint for damages[3] and injunctive relief against former Police Chief Cornelius Murphy, Homicide Chief George Kowalski, Officers Crowley and Clark, Deputy Fazio, and the City and County of San Francisco. He alleged tort causes of action for negligence and intentional infliction of emotional distress, and alleged that police violated his state constitutional right of privacy. The injunction sought would have restrained the City from disclosing the names of criminal suspects before probable cause to arrest existed to issue an arrest warrant. A doctoral candidate at Stanford, Alarcon alleged that his career had been damaged by the City's disclosures.

The trial court granted the City's motion for summary judgment on all causes of action. At the hearing, the trial judge stated that the City owed no professional duty to Alarcon, that the disclosed information was not confidential, and that the public's right to know this information outweighed Alarcon's individual right to privacy.

## II. STANDARD OF REVIEW

■ The City's motion for summary judgment was properly granted if all the submitted papers show that there is no triable issue of material fact and that the City is entitled to a judgment as a matter of law. (See Code Civ. Proc., § 437c, subd. (c).) Its affidavits must be strictly construed; any doubts about the propriety of summary judgment should be resolved against it. On appeal, we may consider stipulated facts. (See *Parker* v. *Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176, 181 [89 Cal.Rptr. 737, 474 P.2d 689, 44 A.L.R.3d 615]; *Clendening* v. *Shipton* (1983) 149 Cal.App.3d 191, 195 [196 Cal.Rptr. 654].) For purposes of this motion, the City admits that it stated that Alarcon was the prime suspect in the Gomez case. Thus, on appeal, the issue is whether the trial court correctly applied the law to these facts.

## III. RIGHT TO PRIVACY

Alarcon contends that the City owed him a constitutional duty not to identify him to the press as a suspect in the Gomez murder until it had

---

[3] Alarcon does not seek damages for his arrest on the lewd conduct, oral copulation, or marijuana charges.

probable cause to arrest him for that offense. (See Cal. Const., art. I, § 1.) The existence of duty is a question of law for us to determine. (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 750 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].)

■ In California, the right to privacy has been explicitly incorporated into the Constitution. (*White* v. *Davis* (1975) 13 Cal.3d 757, 773 [120 Cal.Rptr. 94, 533 P.2d 222]; see Cal. Const., art. I, § 1.)[4] Alarcon contends that the City's disclosure violated this provision because it was an "improper use of information properly obtained for a specific purpose, [such as] the use of it for another purpose or the disclosure of it to some third party . . . ." (See *White* v. *Davis, supra,* 13 Cal.3d at p. 775; *Pitman* v. *City of Oakland* (1988) 197 Cal.App.3d 1037, 1045 [243 Cal.Rptr. 306].) The constitutional provision does not prohibit all incursion into individual privacy, but provides that any such intervention must be justified by a compelling interest. (*White* v. *Davis, supra,* 13 Cal.3d at p. 775; *Payton* v. *City of Santa Clara* (1982) 132 Cal.App.3d 152, 155 [183 Cal.Rptr. 17].)

■ To determine whether there has been a violation of Alarcon's constitutional right of privacy, we determine whether his personal and objectively reasonable expectation of privacy has been infringed by an unreasonable government intrusion. (*People* ex rel. *Franchise Tax Bd.* v. *Superior Court* (1985) 164 Cal.App.3d 526, 540-541 [210 Cal.Rptr. 695]; *Armenta* v. *Superior Court* (1976) 61 Cal.App.3d 584, 588 [132 Cal.Rptr. 586].) If he cannot show an objectively reasonable expectation of privacy and improper government disclosure, or if the City can establish as a matter of law that its compelling interest justified the incursion into Alarcon's privacy, the summary judgment must stand.

■ If the arrest warrant had charged Alarcon with the Gomez murder, he could have had no reasonable expectation of privacy that his status as a murder suspect would not be made public. Such records may properly be disclosed to the public (*Craig* v. *Municipal Court* (1979) 100 Cal.App.3d 69, 78 [161 Cal.Rptr. 19] [court records are public records]; see Gov. Code, § 6254, subd. (f)(1) [in most cases, information about arrestee must be made public]) without violating the arrestee's constitutional right of privacy. (*Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, 865 [132 Cal.Rptr. 464, 553 P.2d 624], cert. den. 429 U.S. 1109 [51 L.Ed.2d 562, 97 S.Ct. 1143].) Traditional Anglo-American jurisprudence distrusts secrecy in judicial proceedings and favors a policy of maximum public access to the proceedings and records of judicial tribunals, in order that the public may know what is

---

[4] Article I, section 1 of the California Constitution provides that: "All people are by nature free and independent and have inalienable rights. Among these are . . . pursuing and obtaining . . . privacy."

done in its courts. (*Estate of Hearst* (1977) 67 Cal.App.3d 777, 784 [136 Cal.Rptr. 821]; see *Cox Broadcasting Corp.* v. *Cohn* (1975) 420 U.S. 469, 495 [43 L.Ed.2d 328, 349-350, 95 S.Ct. 1029]; *Kapellas* v. *Kofman* (1969) 1 Cal.3d 20, 38 [81 Cal.Rptr. 360, 459 P.2d 912] [public has right to be informed of reported arrests and incidents involving suspected criminal activity].)

However, the issue presented in this appeal is more subtle than the mere disclosure of the fact and circumstances of a recent arrest. Here, the arrest warrant charged Alarcon with other offenses that were uncovered in the course of the murder investigation. Although police suspected that Alarcon murdered Gomez until the actual killer confessed to the crime, they did not have probable cause to arrest him for that offense. ▮ Alarcon contends that, until probable cause to arrest him for the murder existed, the City's disclosure of its suspicion that he was the murderer violated his right to privacy.

None of the cases discussing an individual's constitutional right to privacy address the precise issue Alarcon raises. However, we are satisfied that police disclosure that Alarcon was a murder suspect was not a disclosure of confidential information. Officer Crowley's affidavit supporting issuance of the search and arrest warrants set out the facts tending to link Alarcon to the Gomez slaying. Besides detailing the evidence supporting arrest for drug and sex charges, the affidavit explained the circumstances of Gomez's death. Crowley stated that witnesses had placed Alarcon with Gomez shortly before his death, that Gomez was seen entering the same vehicle that police later found in front of Alarcon's home, that Gomez had not been seen alive since he entered that vehicle, and that police thought they saw incriminating evidence inside that vehicle. The affidavit described Alarcon as a "suspect" and asked for a warrant to search for Gomez's fingerprints and blood inside Alarcon's home and vehicle.

In most cases, the facts and circumstances surrounding an arrest must be made public. (Gov. Code, § 6254, subd. (f)(1).) ▮ Certainly, an affidavit supporting the issuance of arrest and search warrants—part of a court file—is a public record. (See *Craig* v. *Municipal Court, supra,* 100 Cal.App.3d at p. 78; *Estate of Hearst, supra,* 67 Cal.App.3d at p. 782; see also *Cox Broadcasting Corp.* v. *Cohn, supra,* 420 U.S. at pp. 494-495 [43 L.Ed.2d at p. 349].) The logical inference to be drawn from the affidavit is that police suspected that Alarcon was the murderer. That Alarcon might not want this fact disclosed is understandable. ▮ However, the disclosure is not a revelation of confidential information, but a disclosure of facts

that were a part of a public record.[5] As such, Alarcon had no objectively reasonable expectation that this information would not be disclosed by police. (See, e.g., *People* ex rel. *Franchise Tax Bd.* v. *Superior Court, supra,* 164 Cal.App.3d at pp. 540-541.)

Alarcon counters that because the affidavit was not available to the public until several days after the City made its statement to the press, the affidavit was not a public record at the time that the statement was issued. We disagree. The lack of actual public access to the affidavit until the searching officers completed their paperwork and filed the warrant return does not make the affidavit any less of a public document. The issue is not *when* the public had access to this record, but *whether* a public right of access existed. (See *Pitman* v. *City of Oakland, supra,* 197 Cal.App.3d at pp. 1045-1046.) As the City owed no constitutional duty to Alarcon, the trial court properly granted summary judgment.

The City's act did not intrude on Alarcon's constitutional right to privacy; therefore, the City need not justify its act by demonstrating a compelling interest to support its disclosure. (See *White* v. *Davis, supra,* 13 Cal.3d at p. 775; *Payton* v. *City of Santa Clara, supra,* 132 Cal.App.3d 152, 155.)[6]

The judgment is affirmed.

Anderson, P. J., and Poché, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 27, 1988. Kaufman, J., was of the opinion that the petition should be granted.

---

[5] The fact that an independent judicial officer reviewed the affidavit and found that it justified issuance of a search warrant assures us of the reasonableness of the City's suspicion that Alarcon was involved in the Gomez homicide.

[6] In light of this conclusion, we need not address Alarcon's contentions that these statements were neither privileged (Civ. Code, § 47) nor protected by the First Amendment.