[No. B041422. Second Dist., Div. Five. June 27, 1990.]

PATRICK BRADSHAW, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Marr & Marchant, Cecil Marr and Diane Marchant for Plaintiff and Appellant.

James K. Hahn, City Attorney, Frederick N. Merkin and Christine C. Patterson, Assistant City Attorneys, Judith E. Reel, Deputy City Attorney, De Witt W. Clinton, County Counsel, S. Robert Ambrose, Assistant County Counsel, and Patrick T. Meyers, Deputy County Counsel, for Defendants and Respondents.

OPINION

**BOREN, J.**—After a public board of rights (Board of Rights) disciplinary hearing, the Los Angeles Police Department suspended plaintiff Patrick Bradshaw from his duties as a police officer of the City of Los Angeles for five days without pay because plaintiff and a fellow officer had detained two uniformed sheriff's deputies at gunpoint for approximately half an hour. The trial court sustained demurrers to causes of action which alleged that defendants had violated privileges of confidentiality and privacy by releasing to the public the results of the officer's disciplinary hearing. Plaintiff has appealed,[1] but we find that no statutory right of confidentiality or constitutional right of privacy applies. We affirm.

---

[1] Plaintiff's complaint had four causes of action, the first of which was for administrative mandamus. The demurrers were sustained as to the second, third, and fourth causes of action, which the trial court then dismissed and severed from the first to allow appeal. Such procedure is appropriate under the circumstances of this case. (See *Aetna Cas. etc. Co.* v. *Pacific Gas & Elec. Co.* (1953) 41 Cal.2d 785, 789 [264 P.2d 5, 41 A.L.R.2d 1037]; *Johnson* v. *Threats* (1983) 140 Cal.App.3d 287, 289 [189 Cal.Rptr. 447]; *Guntert* v. *City of Stockton* (1974) 43 Cal.App.3d 203, 209 [117 Cal.Rptr. 601].)

## FACTS

At approximately midnight on September 15, 1987, plaintiff and his partner were on patrol in their police vehicle. Plaintiff had been advised of "shake downs" either by persons impersonating police officers or by peace officers acting improperly. Plaintiff was also aware that two weeks previously a deputy sheriff's car, containing uniforms, a badge and guns, had been stolen.

While plaintiff and his partner were on patrol, they saw a plain, unmarked vehicle with its headlights out, two people wearing sheriff's uniforms, and one wearing civilian clothes. Soon thereafter, they saw the same vehicle traveling on the street and still with its headlights out. Plaintiff radioed the Los Angeles Police Department (LAPD) communications division, indicated his location and stated that "we got a possible [robbery] suspects['] vehicle." Plaintiff and his partner stopped the vehicle and detained the two occupants, who were, in fact, on-duty and uniformed sheriff's deputies.

Plaintiff and his partner drew their weapons and ordered the deputies to lie face down on the pavement. The deputies complied but protested that they were sheriff's deputies. They were detained for approximately half an hour while plaintiff radioed LAPD communications division to attempt to verify the identity of, as plaintiff explained on the radio, " 'two perturbed Sheriff's Deputies.' " Eventually, an LAPD sergeant arrived at the scene, and one of the deputies was permitted to get up from the pavement and call his field supervisor from the radio in his own vehicle. The field supervisor for the sheriff's deputies arrived and obtained their release.

An LAPD internal investigation ensued. Plaintiff was subsequently charged by the chief of police with one count of misconduct in that he "unnecessarily" took the two on-duty uniformed sheriff's deputies "into custody at gunpoint and forced them to lie prone on the street." Plaintiff had a hearing before the Board of Rights which was open to the public and news media although no members of the press or public attended. After the hearing, the Board of Rights determined that while there may have been sufficient cause to stop the deputies' vehicle, there was insufficient probable cause after seeing their badges to place them in a "felony-prone position." Pursuant to the recommendation of the Board of Rights, plaintiff was suspended by the department for five days without pay.

On February 1, 1988, the same day as plaintiff's suspension, Police Chief Daryl Gates and the City of Los Angeles provided Sheriff Sherman Block, the County of Los Angeles and news media representatives with a portion

of the transcript of the Board of Rights hearing and other information regarding the investigation of the incident, the hearing and the suspension order. The information disseminated had been obtained during the confidential internal investigation for the purpose of "discovering and correcting weaknesses and failures in [LAPD] practices, procedures and personnel," but then the information was released to placate the sheriff's department and humiliate plaintiff. On February 5, 1988, Sheriff Block and the county also forwarded to news media representatives essentially the same information received from Chief Gates and the city regarding the incident for the alleged purpose of humiliating plaintiff. The information was disseminated to the general public in print and by the electronic news media.

Thereafter, plaintiff filed his complaint in superior court. The second cause of action, against all defendants, alleged negligence per se as a result of violating a statutory right of confidentiality (Pen. Code, § 832.7)[2] regarding peace officer personnel records. The third cause of action, against the city defendants, and the fourth cause of action, against the county defendants, alleged violations of the constitutional right to privacy. (Cal. Const., art. I, § 1.)

After it sustained demurrers without leave to amend as to these causes of action, the trial court dismissed them. In its written ruling, the trial court stated that, as to the second cause of action alleging negligence per se from a violation of Penal Code section 832.7, the statute applies only to discovery requests by litigants for information in police officer personnel records, and

---

[2]Penal Code section 832.7 provides as follows: "(a) *Peace officer personnel records* and records maintained by any state or local agency pursuant to Section 832.5 [regarding citizens' complaints against peace officers], or information obtained from these records, *are confidential and shall not be disclosed in any criminal or civil proceeding* except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code [regarding the judicial discovery or disclosure of peace officer personnel records and citizens' complaints]. This section shall not apply to investigations or proceedings concerning the conduct of police officers or a police agency conducted by a grand jury, a district attorney's office, or the Attorney General's office. [¶] (b) Notwithstanding subdivision (a), a department or agency which employs peace officers may disseminate data regarding the number, type, or disposition of complaints (sustained, not sustained, exonerated, or unfounded) made against its officers if that information is in a form which does not identify the individuals involved. [¶] (c) Nothing in this section shall prohibit a department or agency from notifying the complaining party of the disposition of his or her complaint. [¶] The notification described in this subdivision shall not be conclusive or binding or admissible as evidence in any separate or subsequent action or proceeding brought before an arbitrator, court, or judge of this state or the United States. [¶] (d) Nothing in this section shall affect the discovery or disclosure of information contained in a peace officer's personnel file pursuant to Section 1043 of the Evidence Code." (Added by Stats. 1978, ch. 630, § 5, p. 2083. Amended by Stats. 1985, ch. 539, § 3, pp. 1917-1918; Stats. 1988, ch. 685, § 2; Stats 1989, ch. 615, § 1 (adding subds. (b), (c) and (d) to the statute).) (Italics added.)

that the statute was not intended to prohibit public officials from disseminating to the public information about agency disciplinary procedures. As to the third and fourth causes of action, the court ruled that, while in some instances there may be statutory privileges or nondisclosure provisions, no constitutional right prevents disclosure of records which reflect the conduct of the public's business.

## DISCUSSION

### I. NO NEGLIGENT BREACH OF A STATUTORY RIGHT OF CONFIDENTIALITY

 Does Penal Code section 832.7 prohibit law enforcement agencies from disclosing the findings and conclusions of a Board of Rights hearing to the public? We hold that under the circumstances of this case it does not.

### A. *Interpretation of Penal Code Section 832.7*

Plaintiff contends that several related statutes, in particular Penal Code section 832.7, make the information disclosed by the defendants confidential, and that the statutory violation by the defendants establishes negligence per se. The contention hinges on the word "confidential" as it appears in that portion of Penal Code section 832.7, subdivision (a) which provides that "Peace officer personnel records . . . are confidential and shall not be disclosed in any criminal or civil proceeding except by [appropriate judicial] discovery . . . ." ·

 In determining the meaning of statutory language, the basic guidelines are well established. As explained in *People* v. *Woodhead* (1987) 43 Cal.3d 1002 [239 Cal.Rptr. 656, 741 P.2d 154], "Our analysis starts from the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288]; *People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322].) In determining intent, we look first to the words themselves. (*Overstreet, supra*, 42 Cal.3d at p. 895; *Younger, supra*, 16 Cal.3d at p. 40.) When the language is clear and unambiguous, there is no need for construction. (*Overstreet, supra*, 42 Cal.3d at p. 895; *People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].) When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. (*People* v. *Shirokow* (1980) 26 Cal.3d 301, 306-307 [162 Cal.Rptr.

30, 605 P.2d 859]; *Morse* v. *Municipal Court* (1974) 13 Cal.3d 149, 156 [118 Cal.Rptr. 14, 529 P.2d 46]; *Pennisi* v. *Department of Fish & Game* (1979) 97 Cal.App.3d 268, 273 [158 Cal.Rptr. 683].)" (*People* v. *Woodhead, supra,* 43 Cal.3d at pp. 1007-1008.)

■ With respect to the wording of the statute at issue here, the operative word, "confidential," in Penal Code section 832.7, subdivision (a) is in its context susceptible to two reasonable interpretations. Plaintiff urges that, since the word "confidential" is followed by the word "and," the notion of confidentiality is a separate, independent concept which makes the personnel records privileged material. On the other hand, viewing the word "confidential" as descriptive and prefatory to the specific legislative dictate which follows right after the word, it is reasonable to conclude, as did the trial court, that the peace officer personnel records are confidential only in the sense that, as stated in the ensuing statutory language, such records, "shall not be disclosed in any criminal or civil proceeding except by [appropriate judicial] discovery . . . ." Since the statute specifically refers only to restrictions on disclosure in "criminal or civil proceedings," the statute thus does not prohibit a public agency from disclosing the records to the public.

Because the language in the statute itself provides no definitive answer, we must look to extrinsic aids to place the statute in its proper context and ascertain the legislative intent. ■ The statute must be viewed in its proper context and construed "as a whole, in harmony with other statutes relating to the general subject." (*Clinton* v. *County of Santa Cruz* (1981) 119 Cal.App.3d 927, 933 [174 Cal.Rptr. 296].)

■ Related statutes in the California Public Records Act (Gov. Code, § 6250 et seq.) effectively grant a police department the discretion to disclose information in an officer's personnel file. In enacting this statutory scheme, the Legislature proclaimed, it was "mindful of the right of individuals to privacy, [but] finds and declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (Gov. Code, § 6250.) By Government Code section 6254, subdivision (c), the Legislature exempted, among other items, "personnel, medical or similar files" from those documents which must be disclosed, but section 6254 also "endows the agency with discretionary authority to override any of the [specified] statutory exemptions when some dominating public interest favors disclosure. The [specified] exemptions, then, are permissive, not mandatory; they permit nondisclosure but do not prohibit disclosure. When the agency exercises its permissive disclosure authority, public inspection follows." (*Black Panther Party* v. *Kehoe* (1974) 42 Cal.App.3d 645, 656 [117 Cal.Rptr. 106].)

■ The Legislature has created only a narrow restriction upon a police department's discretion to release to the news media information pertaining to its employees. Part of the public safety officers' "Bill of Rights" (Gov. Code § 3300 et seq.) provides that as to an officer under departmental investigation, the employee's home address or photograph shall not "be given to the press or news media without [the employee's] express consent." (Gov. Code, § 3303, subd. (e).)

Under the familiar rule of statutory construction, "where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed." (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537].) No other statutory provisions specifically address any other limitation on the authority of a police department to release information to the news media, and we do not construe any other specific limitation as intended by the Legislature.

■ The intent of the Legislature in enacting Penal Code section 832.7, subdivision (a) was to address an entirely different concern unrelated to the release of information to the news media. As the Supreme Court has held, the intent of the Legislature was to codify in 1978 "the privileges and procedures surrounding what had come to be known as '*Pitchess* motions' (after our decision in *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, [113 Cal.Rptr. 897, 522 P.2d 305]) through the enactment of Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 and 1045." (*City of Santa Cruz* v. *Municipal Court* (1989) 49 Cal.3d 74, 81 [260 Cal.Rptr. 520, 776 P.2d 222], fns. omitted.)[3]

---

[3] Penal Code section 832.8 provides as follows: "As used in Section 832.7, 'personnel records' means any file maintained under that individual's name by his or her employing agency and containing records relating to: . . . . [¶] (d) Employee advancement, appraisal, or discipline; [¶] (e) Complaints, or investigations of complaints, concerning an event or transaction in which he participated, or which he perceived, and pertaining to the manner in which he performed his duties; or [¶] (f) Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy." (Added by Stats. 1978, ch. 630, § 6, p. 2083.)

Evidence Code section 1043 provides, in pertinent part, as follows: "(a) In any case in which discovery or disclosure is sought of peace officer personnel records or records maintained pursuant to Section 832.5 of the Penal Code or information from those records, the party seeking the discovery or disclosure shall file a written motion with the appropriate court or administrative body upon written notice to the governmental agency which has custody and control of the records. . . ." (Added by Stats. 1978, ch. 630, § 1, p. 2082. Amended by Stats. 1989, ch. 693, § 7.)

Evidence Code section 1045 provides, in pertinent part, as follows: "(a) Nothing in this article shall be construed to affect the right of access to records of complaints, or investigations of complaints, or discipline imposed as a result of such investigations, concerning an event or transaction in which the peace officer participated, or which he perceived, and pertaining to the manner in which he performed his duties, provided that such information is relevant to the subject matter involved in the pending litigation. [¶] . . . [¶] (d) Upon motion seasonably

The Supreme Court in *Pitchess* v. *Superior Court, supra*, 11 Cal.3d 531, held that criminal defendants have a right to discover relevant information contained in a peace officer's personnel file pertaining to citizen complaints against the officer. *Pitchess,* however, did not affect the statutory privilege of a public agency to refuse to disclose official information where it deemed the need to maintain secrecy greater than the need for disclosure in the interests of justice. (See Evid. Code, § 1040.)[4] If the agency asserts its right to refuse to disclose the information, the consequence is dismissal of the case.

The legislative response to *Pitchess* was Senate Bill No. 1436. (See Pen. Code, §§ 832.5, 832.7 and 832.8, and Evid. Code §§ 1043 and 1045; Stats. 1978, ch. 603, §§ 1-8).) This legislation established procedures to obtain personnel records despite an agency's decision to invoke Evidence Code section 1040 and was intended "to curtail the practice of record shredding and discovery abuses which allegedly occurred in the wake of [the *Pitchess* decision]." (*San Francisco Police Officers' Assn.* v. *Superior Court* (1988) 202 Cal.App.3d 183, 189 [248 Cal.Rptr. 297]; see *City of Santa Cruz* v. *Municipal Court, supra,* 49 Cal.3d at pp. 81-85, 92.) It is thus apparent that Penal Code section 832.7, and the related legislation enacted with it, was intended to address the legal developments regarding discovery rights which followed the *Pitchess* decision and was not intended to abrogate a police department's right to disseminate information pursuant to Government Code section 6250 et seq.

■ Moreover, the Legislature did not by the use of the word "confidential" in Penal Code section 832.7, subdivision (a) intend to impose upon an agency a standard of care, the violation of which could be the basis for a cause of action for negligence per se. Although it is not necessary that a statute prescribe a penalty for its violation to find a standard of care

made by the governmental agency which has custody or control of the records to be examined or by the officer whose records are sought, and upon good cause showing the necessity thereof, the court may make any order which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression. [¶] (e) The court shall, in any case or proceeding permitting the disclosure or discovery of any peace officer records requested pursuant to Section 1043, order that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law." (Added by Stats. 1978, ch. 630, § 3, p. 2082. Amended by Stats. 1982, ch. 946, § 1, p. 3432.)

[4]Evidence Code section 1040 provides, in pertinent part, as follows: "(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so and: . . . [¶] (2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding. In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered." (Amended by Stats. 1984, ch. 1127, § 2, p. 3805.)

embodied in the statute (see Evid. Code, § 669), the Legislature could have prescribed a penalty for the violation of the purportedly independent requirement of confidentiality. It has prescribed penalties for violation of a standard of care in other contexts. (See, e.g., Lab. Code, § 6322 (violation of trade secret confidentiality); Pen. Code, § 11105, subd. (b)(9) (public utility's disclosure of confidential information); Welf. & Inst. Code, § 5330 (release of confidential information in violation of the Lanterman-Petris-Short Act).) The failure to establish a penalty for violating the standard of care alleged as to confidentiality here further supports our conclusion that the Legislature did not intend to create a requirement of confidentiality, other than in civil or criminal judicial proceedings as described in Penal Code section 832.7, subdivision (a).

 Finally, our conclusion is not altered by the recent amendment to Penal Code section 832.7, which created subdivisions (b), (c), and (d). (See Stats. 1989, ch. 615, § 1, eff. Sept. 21, 1989.)[5] This amendment essentially proclaims that the prior and basically original version of the statute, now referred to as subdivision (a), permits a police department (1) to disseminate data regarding number, type and disposition of complaints against its officers if the officers are not identified, and (2) to inform a complaining party of the disposition of the complaint. The amendment does not, by its terms, acknowledge or create a confidentiality privilege in peace officer personnel information outside of a civil or criminal proceeding as described in subdivision (a). Indeed, the amendment could be viewed as dispelling any broad notion of confidentiality, since the amendment affirms that there is no prohibition in subdivision (a) to disseminating certain data and information.

Speculation that the 1989 amendment acknowledges or creates a more general confidentiality privilege in peace officer personnel information, outside the scope of civil or criminal proceedings, as described in subdivision (a), is apparently supported by comments in an Attorney General opinion.[6]

---

[5] See text of statute in footnote 2, *ante*.

[6] The 1989 amendment was in response to an Attorney General opinion which stated that Penal code section 832.7 contemplates disclosure of peace officer personnel records or information obtained from these records only "(1) pursuant to discovery motions and (2) in investigation or proceedings of the grand jury or the district attorney's office. Accordingly, release of information in other situations would constitute a clear violation of the section." (71 Ops.Cal.Atty.Gen. 247, 250 (1988).) "The addition of section 832.7 coupled with Evidence Code sections 1043 and 1045 in 1978 was to protect the right of privacy of peace officers who were the subject of citizens' complaints, and to make their personnel records, which include such complaints, privileged material." (*Id.* at p. 249.)

The Attorney General's opinion was in response to a request from a state assemblyman who inquired whether a public agency may release to the public summary information and statistical data as to the disposition of citizens' complaints filed pursuant to Penal Code section 832.5. The Attorney General's answer to the inquiring legislator was that Penal Code section 832.7, "by its confidentiality and disclosure provisions" (71 Ops.Cal.Atty.Gen.,

■ But as an extrinsic aid in helping determine legislative intent, an Attorney General opinion is not dispositive. (*Wenke* v. *Hitchcock* (1972) 6 Cal.3d 746, 751-752 [100 Cal.Rptr. 290, 493 P.2d 1154].) We find the Attorney General opinion unpersuasive because it did not address the issue in the context of the case at bench.

To the extent that the Legislature by an amendment wished to clarify its intent in enacting a prior statute or to alter or expand the intended purpose of a prior statute, it was and still is, of course, free to do so by appropriate statutory language. It has not, however, done so, and we decline the apparent invitation to so divine or rewrite the language in the statute.

B. *Application of Penal Code Section 832.7 to Open Administrative Hearings*

The city defendants urge an additional theory for sustaining the demurrer to the second cause of action alleging negligence per se from a violation of Penal Code section 832.7. They contend that the dissemination of findings of an LAPD Board of Rights does not violate section 832.7, because that statute applies only to the results of preliminary internal fact-finding investigations and not to the Board of Rights hearing which is a quasi-judicial administrative hearing.

Penal Code section 832.7 regulates the discovery of "[p]eace officer personnel records and records maintained . . . pursuant to [Penal Code] [s]ection 832.5 . . . ." Penal Code section 832.5 requires police departments to establish written procedures, available to the public, to investigate citizens' complaints against police department personnel and to retain the reports and findings of the ensuing investigations for five years. The city defendants therefore reason that the transcript of a portion of plaintiff's Board of Rights hearing is not one of the "records" within the scope of Penal Code section 832.7, because it is neither an internal personnel record nor a report of an internal police investigation of a citizen's complaint against an officer.

This conclusion is consistent with the holding in *San Francisco Police Officers' Assn.* v. *Superior Court, supra*, 202 Cal.App.3d 183, where the police association challenged city rules which established procedures for investigating complaints of police misconduct, recommending disciplinary action to the police chief, and permitting disclosure to complainants and other persons of the investigation reports and related records, including the hearing officers' decisions and findings of fact. (*Id.* at pp. 185-186.) The

---

*supra*, at p. 248), bars a public agency from releasing to the public such information and data regarding citizen complaints against peace officers. Hence, the perceived need for the 1989 amendment to section 832.7.

court applied Penal Code sections 832.5 and 832.7 to the internal investigatory procedures of the San Francisco Police Commissions's Office of Citizen Complaints (OCC), holding the procedures valid except for the disclosure of the hearing officer's decision and the OCC director's recommendation. (*Id.* at p. 192.) Most significantly, the court's discussion acknowledged the distinction between preliminary OCC investigation hearings and ensuing quasi-judicial administrative hearings. The confidentiality mandated by Penal Code sections 832.7 and 832.5 applies only to internal investigatory results and not to the subsequent and second-tier quasi-judicial police commission hearings. As the court observed, the "final decision of the [police] commission [in San Francisco] becomes a public record." (*Id.* at p. 186, fn. 2.) The LAPD has a basically similar two-tiered disciplinary system. (See Charter of the City of Los Angeles, art. XIX, § 202.)

■ Accordingly, the city defendants contend that, consistent with the conclusion in *San Francisco Police Officers' Assn.* v. *Superior Court, supra,* 202 Cal.App.3d 183, Penal Code section 832.7 pertains only to the results of LAPD internal investigations of police misconduct and not to the dissemination of findings of the Board of Rights. However, we have held, as previously discussed, that the confidentiality in Penal Code section 832.7, subdivision (a) only precludes disclosure of peace officer records, by the terms of the statute, "*in any criminal or civil proceeding* except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code." (Italics added.) A Board of Rights proceeding is an administrative hearing and not a civil or criminal proceeding, and no formal discovery procedures are available. (LAPD Board of Rights Manual, § 395, p. 27.) The presumptively open nature of a Board of Rights hearing (LAPD Board of Rights Manual, § 204.30, p. 9) is thus unaffected by Penal Code section 832.7, subdivision (a).

## II. THE CONSTITUTIONAL RIGHT TO PRIVACY IS NOT IMPLICATED BY THE PUBLICATION OF FINDINGS OF A BOARD OF RIGHTS

Plaintiff's third and fourth causes of action allege violations of his constitutional right to privacy (Cal. Const., art. I, § 1), and are based on essentially the same circumstances as his second cause of action. ■ To recover for an invasion of the right to privacy, there must be, as a preliminary requirement, "an objectively reasonable expectation of privacy and improper government disclosure." (*Alarcon* v. *Murphy* (1988) 201 Cal.App.3d 1, 5 [248 Cal.Rptr. 26]; see *Armenta* v. *Superior Court* (1976) 61 Cal.App.3d 584, 588 [132 Cal.Rptr. 586].) "[T]he improper use of information properly obtained for a specific purpose, for example, the use of it for another purpose or the disclosure of it to some third party" (*White* v. *Davis* (1975) 13 Cal.3d 757, 775 [120 Cal.Rptr. 94, 533 P.2d 222]), may implicate the constitutional right to privacy. Nonetheless, it is well settled that the constitution-

al right to privacy is not implicated by the dissemination of information already in the public domain. (See, e.g., *Alarcon v. Murphy, supra*, 201 Cal.App.3d at pp. 6-7; *Pitman v. City of Oakland* (1988) 197 Cal.App.3d 1037, 1045-1046 [243 Cal.Rptr. 306]; *People* ex rel. *Franchise Tax Bd.* v. *Superior Court* (1985) 164 Cal.App.3d 526, 540-541 [210 Cal.Rptr. 695].)

The information, which plaintiff complains was improperly disseminated, was already in the public domain. Quasi-judicial administrative proceedings, such as Board of Rights hearings, are presumptively open to the public, and the final decision of a Board of Rights is considered "a public record." (*San Francisco Police Officers' Assn.* v. *Superior Court, supra*, 202 Cal.App.3d 183, 186, fn. 2.) In fact, the Board of Rights hearing was open to the public and news media representatives. Moreover, a peace officer training film and magazine publicly disclosed and ridiculed the events which were the subject of the hearing. Finally, as to the cause of action against the county defendants, the information of which plaintiff complains had previously been disseminated by the city defendants and was thus already known to the public and could no longer have entailed any protected right of privacy. (*Gill* v. *Hearst Publishing Co.* (1953) 40 Cal.2d 224, 228-229 [253 P.2d 441].)

### CONCLUSION

In view of our interpretation of Penal Code section 832.7 and the nature of the Board of Rights hearing, we find that the trial court properly dismissed plaintiff's causes of action alleging negligence per se and violations of the constitutional right to privacy. We thus need not address whether the facts, as pleaded, establish that the defendants disseminated the information "in the proper discharge of an official duty" (*Kilgore* v. *Younger* (1982) 30 Cal.3d 770, 778 [180 Cal.Rptr. 657, 640 P.2d 793]) and might therefore be deemed public employees statutorily immunized from liability pursuant to the Tort Claims Act (Gov. Code, §§ 815.2, subd. (b), 815.6, & 821.6).

### DISPOSITION

The judgment is affirmed.

Ashby, Acting P. J., and Turner, J., concurred.

A petition for a rehearing was denied July 26, 1990, and appellant's petition for review by the Supreme Court was denied October 30, 1990. Lucas, C. J., Panelli, J., and Kennard, J., were of the opinion that the petition should be granted.