**Joanne WELSH, Plaintiff,**

v.

**CITY AND COUNTY OF SAN FRANCISCO, et al., Defendants.**

**No. C–93–3722 DLJ.**

United States District Court, N.D. California.

Jan. 20, 1995.

---

Roderick P. Bushnell, M. Gerald Schwartz-bach, and Thomas M. Litton, with Bushnell, Caplan & Fielding, San Francisco, for plaintiff.

Jonathan V. Holtzman, and Arthur A. Hartinger, City Attys. Office, San Francisco, for defendants.

## ORDER

JENSEN, District Judge.

This is a civil rights action brought by plaintiff alleging sexual harassment, sex discrimination, defamation, and retaliation in employment. In early 1993, after an investigation authorized by the San Francisco Police Commission ("Police Commission") and a subsequent closed hearing of these charges, the Police Commission determined that there was insufficient evidence to sustain the charges. On October 14, 1993, plaintiff filed a federal complaint in this Court. Defendants moved for a protective order to prevent disclosure to the public of the tapes and transcripts of witnesses interviewed during the Police Commission's investigation. On

July 18, 1994, following a hearing, Magistrate Judge F. Steele Langford found that defendants had failed to carry their burden of showing good cause for a protective order that would restrict public access to the tapes and transcripts. On July 29, 1994, defendants filed a motion for reconsideration of Magistrate Judge Langford's Order. Plaintiff timely filed an opposition. Brief of amicus curiae of San Francisco Examiner and brief of amici curiae National Organization for Women, The San Francisco Bay Guardian and SF Weekly in opposition to defendants' motion were also filed. Defendants filed a timely reply. Upon consideration of the submissions, the Court grants in part defendants' motion for reconsideration and hereby issues a protective order to prevent public disclosure of only the tapes.

## I. BACKGROUND

Plaintiff Joanne Welsh is a San Francisco police officer. On February 11, 1993, plaintiff's charges of sexual harassment against the Chief of Police, Anthony Ribera, were made public by the San Francisco Examiner. The San Francisco Police Commission then conducted an investigation of these charges against Chief Ribera. In the course of the investigation, the Police Commission conducted taped interviews of numerous civilians and police officers concerning plaintiff's allegations. The Police Commission reviewed all the information gathered and determined that there was insufficient evidence to support the claim that Chief Ribera engaged in any misconduct.

On October 14, 1993, plaintiff filed a federal complaint alleging sexual harassment and sex discrimination under Title VII of the Civil Rights Act, as well as retaliation in employment. Plaintiff alleges pendent jurisdiction under the California Fair Employment & Housing Act with respect to three causes of action relating to sexual harassment, retaliation, and defamation. Plaintiff also alleges a violation of 42 U.S.C. § 1985 against Ribera and other unnamed co-conspirators relating to inappropriate treatment and sex discrimination. Defendant Ribera then filed a counterclaim alleging defamation by plaintiff Welsh.

Plaintiff alleges in her complaint that she was the subject of sexual harassment by Chief Ribera. Plaintiff alleges that from September 1989 to January 1990, and then in 1992 and 1993, plaintiff had a working relationship with Chief Ribera and that Ribera made numerous sexual advances toward plaintiff. The complaint alleges that as a result of plaintiff's refusal to respond to Ribera's advances, and after the Police Commission's dismissal of her charges, plaintiff was removed from her position as the Public Affairs Officer under Chief Ribera and relocated to the Taraval Station.

Plaintiff has requested that defendants produce in discovery the tapes and transcripts which constituted the Police Commission's investigation into plaintiff's complaint. Defendants have refused to produce the tapes and transcripts, unless plaintiff agrees to a protective order against public disclosure. This Court, pursuant to stipulation of the parties, ordered a stay of deposition discovery until the resolution of the issue of whether a protective order should issue. The Court referred the matter to Magistrate Judge F. Steele Langford for resolution of the issue.

On July 18, 1994, following a hearing, Magistrate Judge Langford issued a written Memorandum and Order directing that the tapes and/or transcripts be produced as requested and denying defendants' motion for a protective order. On July 29, 1994, defendants filed the current motion for reconsideration of that Order.

## II. DISCUSSION

### A. *Legal Standards*

#### 1. *Standard for Reconsideration*

Local Rule 410–2(a) provides that district court judges may reconsider any nondispositive pretrial order made by a magistrate only if the Court finds that the order of the magistrate is "clearly erroneous or contrary to law." Rule 410–2(a), Local Rules of Practice for the United States District Court for the Northern District of California; *see also* 28 U.S.C. § 636(b)(1)(A) (1994).

## 2. *Protective Order*

 Protective orders as to information disclosed pursuant to Federal Rule of Civil Procedure 26(c) should be granted only upon a showing of good cause. *Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir. 1975). "A showing of Rule 26(c) good cause requires a balancing of the interests of the parties competing to open or close the civil discovery process to the public." *Hawley v. Hall,* 131 F.R.D. 578, 584 (D.Nev.1990). "[A]ccess is particularly appropriate when the subject matter of the litigation is of especial public interest...." *In re "Agent Orange" Prod. Liab. Litig.,* 821 F.2d 139, 146 (2d Cir.), *cert. denied sub nom., Dow Chem. v. Ryan,* 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987).

 The moving party must present a factual showing of a particular and specific need for the protective order. *Gray v. First Winthrop Corp.,* 133 F.R.D. 39, 40 (N.D.Cal. 1990) (citations omitted); *see General Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204, 1212 (8th Cir.1973), *cert. denied,* 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974). "A demonstration of good cause embodies a showing (1) that the documents in question truly are confidential and (2) that disclosure of the documents would cause a 'clearly defined and very serious injury.'" *Traveler's Ins. Co. v. Allied–Signal Inc. Master Pension Trust,* 145 F.R.D. 17, 18 (D.Conn.1992). "[T]he harm must be significant, not a mere trifle." *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986) (citation omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* (citations omitted). Mere embarrassment by the release of information is insufficient to constitute serious harm. "[A]n applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious." *Id.; Culinary Foods, Inc. v. Raychem Corp.,* 151 F.R.D. 297, 301 (N.D.Ill.1993) ("A claim that public disclosure of information will be harmful to a defendant's reputation is not 'good cause' for a protective order.")

## B. *Analysis of Defendants' Motion for Reconsideration*

Defendants challenged the validity of the Order on five separate grounds: (1) the Order misreads General Order No. 34; (2) the Order misapplies *Kelly v. City of San Jose,* 114 F.R.D. 653 (N.D.Cal.1987); (3) the Order contravenes *Jackson v. City and County of San Francisco,* United States District Court No. C93–0086 DLJ (Dec. 20, 1993); (4) the Order establishes a new and different standard for issuing protective orders; and (5) the Order misapplies the good cause requirement.

### 1. *General Order No. 34*

 Defendants contend that the Order of the Magistrate Judge misreads General Order No. 34 of the Northern District of California as being discretionary because General Order No. 34 specifically mandates protective orders where, as here, materials sought to be produced are confidential personnel records under state law. General Order No. 34 provides

> If one or more parties desires protection of documents or other information disclosed under paragraph B of this section, the parties *shall* enter a reasonable protective order to govern the disclosed documents or information until further order of the court.

General Order No. 34, Section VII.D (emphasis added). Defendants argue that the word "shall" conveys a mandatory obligation, and that plaintiff bears a heavy burden to show that a protective order is improper.

Defendants' argument is unavailing. Rather, the relevant portion of General Order No. 34 envisions a situation where disputed discoverable material is provided to the opposing party *prior to* the court's having had an opportunity to address the issue. In a situation such as the present one, where the Court referred the issue to a Magistrate Judge before any disputed discoverable materials were disclosed, there is no need for a protective order prior to order of the court. Even in a situation where an interim protective order is agreed upon by the parties, the Court is free to retain it, modify it, or dispense with the protective order entirely.

Therefore, defendants' first argument must fail.

## 2. *The Kelly Decision*

Defendants next argue that the Langford Order misapplies *Kelly,* 114 F.R.D. 653 because *Kelly* presumes that a protective order will be issued when disclosure of confidential police files is made to a plaintiff in the context of litigation.

Defendants' reliance on *Kelly* is misplaced. The issue in *Kelly* was not whether there should be a protective order, but whether there should be disclosure to the party requesting discovery. As Magistrate Judge Langford properly stated, *Kelly* "involved a city seeking to prevent all production of its personnel records." Langford Order, at 4. The court in *Kelly* had previously concluded that a protective order was appropriate because the defendants' interests would be seriously threatened by the "disclosure of training manuals and material pertaining to the use of force in making an arrest [to the general public that] would endanger their officers and the public." *Kelly,* 114 F.R.D. at 671. The court saw no reason why disclosure to the parties in the suit should be prevented because the court had already imposed a protective order that would prevent disclosure to the public. *Id.* at 671.

In short, the *Kelly* court did not presume a protective order would be issued because a protective order already existed. The issue of when a protective order should be issued was not before the court; nor did the court promulgate a rule that presumes the issuance of a protective order.

■ Magistrate Judge Langford cited *Kelly* for the proposition that "[c]ourts are required to conduct case-by-case, situation specific analyses of competing interests (balancing) to determine whether to order disclosure of material that falls within the definitional reach of (the official information) privilege," Langford Order, at 4 (citation omitted); and concluded that "it is the court, and not the holder of the documents, that has the ultimate power to decide whether there will be disclosure." *Id.* at 7–8 (citation omitted). These conclusions are neither erroneous nor contrary to law. Thus, the Order of Magistrate Judge Langford does not misapply *Kelly.*

## 3. *The Jackson Order*

■ Defendants' third argument is that the Order conflicts with the standard practice in the Northern District of California as well as this Court's own previous Order. Defendants cite *Jackson v. City and County of San Francisco,* United States District Court No. C–93–0086 DLJ (N.D.Cal. Dec. 20, 1993) ("*Jackson* Order") for the proposition that police personnel files are routinely produced subject to a protective order without court intervention.

Defendants' contention overstates the conclusion in the *Jackson* Order. The passage cited by defendants merely provides for a mechanism by which parties can attempt to avoid the motion process under circumstances where disclosure with a protective order is required. The court distinguished that scenario from the *Kelly* scenario where defense counsel "*conduct the kind of analysis described in [Kelly] and conclude in good faith that they can legitimately ask the court to adjudicate fully an invocation of the official information privilege.*" *Jackson* Order, at 3 (emphasis in original). There is, however, at least one more scenario where there should be disclosure *without* a protective order. Nowhere in the *Jackson* Order is the assertion that protective orders are always required or presumed. Accordingly, the Order of Magistrate Judge Langford does not conflict with any settled law in the Northern District.

## 4. *Creation of a New and Different Standard*

Defendants argue that *King v. Conde,* 121 F.R.D. 180 (E.D.N.Y.1988) is contrary to the established law of the Northern District (of routinely issuing protective orders) and that the Order of Magistrate Judge Langford adopting the analysis in *King* constitutes clear error. Defendants overstate the application of *King* in the Order. The passage relied upon by Magistrate Judge Langford is as follows:

Lawfulness of police operations is a matter of great concern to citizens in a democracy and protective orders must not be granted without that public interest in mind. The parties and the court should consider carefully the benefits and costs of a properly designed protective order.

*King*, 121 F.R.D. at 190.

■ Accounting for the public's interest in deciding whether to issue a protective order is not contrary to any established law of the Northern District. Although California Penal Code prohibits disclosure of peace officer personnel records, Cal.Penal Code §§ 832.7, 832.8 (1994), the federal judiciary has an unquestionable obligation to ensure that cases are decided fairly in Federal proceedings based upon all relevant, nonprivileged documents. *See Kerr v. United States Dist. Court for the N. Dist. of Cal.*, 511 F.2d 192 (9th Cir.1975), *aff'd*, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). State law is not binding on federal courts in these kinds of cases. *Kelly*, 114 F.R.D. at 655–56.

Predicating their reasoning on the assertion that protective orders are routinely issued without court interference in the Northern District, defendants fault Magistrate Judge Langford for taking into account the public's interest "in the validity and thoroughness of the investigation, and in the integrity or lack [of] integrity of those who serve them in public office." *See* Langford Order, at 8. Because defendants' presumption that this matter cannot be considered by the Magistrate Judge is incorrect, their fourth argument must also fail.

### 5. *Good Cause Requirement*

Defendants contend that good cause for a protective order may be found in (1) concerns for the privacy of Chief Ribera and witnesses who testified during the Police Commission's investigation; (2) the state's legislative judgment that the confidentiality of police personnel records be maintained; and (3) the need to ensure a fair trial. Plaintiff argues that defendants' assertions lack merit, and that there is a substantial public interest in reviewing charges of sexual harassment made in public lawsuits and in reviewing whether

or not the Police Commission properly conducted its investigation into those allegations.

#### a. *Privacy Interests*

Defendants argue that Chief Ribera and individual witnesses have privacy rights that preclude disclosure of the tapes and transcripts because (1) California statutes protect their privacy interests; (2) the witnesses relied on assurances of confidentiality; (3) disclosure of the material would have a chilling effect on witnesses in future Police Commission investigations; and (4) Chief Ribera still has legitimate privacy interests even though he is a public person.

■ Defendants' arguments are unpersuasive. First, the California statutes governing the release of police personnel files, Cal.Evid.Code § 1043 (1994); Cal.Penal Code §§ 832.7, 832.8 (1994), do not create privacy interests on the part of individual witnesses or officers because they were not enacted to protect such interests. In *Bradshaw v. City of Los Angeles*, 221 Cal.App.3d 908, 270 Cal.Rptr. 711 (1990), the police chief, on the same day as the suspension of a police officer, provided news media representatives with a portion of the transcript of the disciplinary hearing and other information regarding the investigation of the incident, the hearing, and the suspension order. *Id.* at 913–14, 270 Cal.Rptr. 711. The information disseminated had been obtained during a "confidential internal investigation," but was released to "placate the sheriff's department and humiliate plaintiff." *Id.* at 914, 270 Cal. Rptr. 711.

The court in *Bradshaw* concluded that the officer had no statutory right of confidentiality or constitutional right of privacy in the results of the disciplinary hearing. *Id.* at 912, 270 Cal.Rptr. 711. Under California Penal Code § 832.7(a),

> peace officer personnel records are confidential only in the sense that, as stated in the ensuing statutory language, such records, "shall not be disclosed in any criminal or civil proceeding except by [appropriate judicial] discovery...." Since the statute specifically refers only to restrictions on disclosure in "criminal or civil proceedings," the statute thus does not

prohibit a public agency from disclosing the records to the public.

*Id.* at 916, 270 Cal.Rptr. 711 (quoting Cal.Penal Code § 832.7) (alteration in original). Accordingly, it would have been improper for police investigators to make any promises of confidentiality.

 To the extent that individual witnesses might have relied on promises of confidentiality, the reliance was misplaced in light of the limited protection offered by the California Penal and Evidence Codes. The Police Commission, under its own rules governing trials of disciplinary cases, was entitled to hold a public hearing on the matter, in which case the tapes and transcripts of the interviews could have been made public. Since the Police Commission had not made its determination to keep the investigation secret as of the time of the interviews, reliance on any promises of confidentiality made during the interviews would not have been reasonable.

In *Berkeley Police Association v. City of Berkeley,* 76 Cal.App.3d 931, 143 Cal.Rptr. 255 (1977), Berkeley police officers alleged that the Berkeley Police Department had assured them that information they provided to the Department's Internal Affairs Bureau investigator, and the Internal Affairs Bureau report which summarized the information, would not be divulged to anyone outside the police department. *Id.* at 938, 143 Cal.Rptr. 255. The officers argued that this established a valid claim of equitable estoppel to prevent a member of the police review commission (which has the function of providing for community participation in setting and reviewing police department policies, practices, and procedures) from attending police department board of review hearings where the bureau reports were discussed. *Id.* at 934–35, 938, 143 Cal.Rptr. 255. The court rejected the argument, stating that the officers "should reasonably have been aware that police records concerning the investigation of citizen complaints are subject to discovery (and hence disclosure) where good cause is shown in both criminal proceedings [citation omitted] and civil trials." *Id.* at 939, 143 Cal.Rptr. 255 (citations omitted). As in *Berkeley Police Association,* the officers who

provided statements in the investigation into sexual harassment charges against Chief Ribera "had notice of facts sufficient to put reasonably prudent persons upon inquiry that information given to police investigators [during investigations of complaints] could not forever have been kept secret within the police department." *See id.*

In sum, the police department could have released the information to the public under *Bradshaw.* Alternatively, the Police Commission could have released the information during a public hearing. Thus, any officer's "'reliance' on representations that [his or her] statements would always remain within the department cannot be said to have been reasonable." *See id.*

 Defendants also argue that disclosure of the material would have a chilling effect on disclosures by future witnesses in Police Commission investigations. This argument was rejected in *Kelly,* where the police asserted the government privilege to bar disclosure of citizen complaints against police officers and the Internal Affairs investigative files generated by those complaints, because he believed that "without assurances of confidentiality officers will refuse to cooperate with Internal Affairs investigations." *Id.* at 672. The court stated

> [D]efendants cannot meet their burden simply by asserting, without empirical support, that officers will refuse to cooperate with Internal Affairs investigations if their statements are subject to even limited disclosure. This is particularly true in the case at bar because San Jose police officers are subject to dismissal if they refuse to answer questions relating to the performance of their duties.

*Id.* Likewise, members of the San Francisco Police Department are obligated, "when questioned on matters relating to their employment with the police department by a superior officer or by one designated by a superior officer for this purpose, [to] answer all questions truthfully and without evasion." San Francisco Police Department General Order No. D–1 (Dec. 30, 1981), at 4, ¶ 21.

The *Kelly* court found "no empirical support for the contention that the possibility of

disclosure would reduce the candor of officers who contribute to internal affairs investigations." Instead, the court found "solid reasons" to believe that the possibility of disclosure "might have the opposite effect (improving accuracy and honesty)." *Kelly*, 114 F.R.D. at 665. "In short, officers will feel pressure to be honest and logical when they know that their statements and their work product will be subjected to demanding analysis by people with knowledge of the events under investigation and considerable incentive to make sure that the truth comes out...." *Id.*

The *Kelly* court found even less reason to believe that the possibility of disclosure will discourage citizens from filing complaints against police officers:

> A citizen who complains about police misconduct simply is not in the same position as a confidential informant or a citizen who offers information that is potentially damaging to another citizen. The obvious reasons people in the latter categories have for wanting to protect their anonymity simply have no bearing on the behavior of citizens who file complaints against the police themselves.

*Id.* at 666. Accordingly, the decision by Magistrate Judge Langford that disclosure of the records in question will not have an impermissibly adverse effect on citizen complaints cannot be said to be clearly erroneous or contrary to law.

### b. *State's Legislative Judgment*

 Defendants concede that California statutes limiting the disclosure of police personnel records in pretrial discovery do not restrict discovery in federal courts. "Questions of privilege that arise in the course of the adjudication of federal rights are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989) (quoting Federal Rule of Evidence 501). Despite claims of privilege, personnel files are discoverable in federal question cases, including Title VII actions. *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1519 n. 6 (9th Cir.1987) (citations omitted).

 Nevertheless, defendants argue that good cause for a protective order is manifested by the state's legislative judgment that confidentiality is mandated. While this Court may give some weight to privacy rights protected by state statutes, the "ultimate responsibility for deciding how much weight to ascribe to such interests, and how that weight compares with the significance of competing interests, must reside with the federal courts." *Kelly*, 114 F.R.D. at 656 (citation omitted). Once again, Magistrate Judge Langford's decision is not clearly erroneous or contrary to law.

### c. *Fair Trial*

 Defendants argue that a protective order is necessary to ensure a fair trial because pretrial publicity would necessarily overwhelm the possibility of a fair public trial. However, Magistrate Judge Langford properly concluded that defendants' broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, did not establish good cause for a protective order on this basis. *See Cipollone*, 785 F.2d at 1121.

Pretrial publicity alone does not preclude a fair trial. As the Ninth Circuit stated in *Seattle Times Co. v. United States District Court for the Western District of Washington*, 845 F.2d 1513 (9th Cir.1988), "Recent more highly publicized cases indicate that most potential jurors are untainted by press coverage despite widespread publicity.... This court did not find the pervasive pretrial publicity conclusive." *Id.* at 1517 (citations omitted).

Besides, the mechanism of change of venue as well as careful jury selection can ensure a fair trial. In reversing the district court's order in the John DeLorean criminal case prohibiting pretrial public dissemination of the government's surveillance tapes generated during its investigation of the defendants, the Ninth Circuit observed that "the circuit courts have repeatedly found voir dire to be a viable alternative to restraints on the press, even in cases attracting massive publicity." *C.B.S. v. United States Dist. Court for the*

*Cent. Dist. of Cal.,* 729 F.2d 1174, 1182 (9th Cir.1983). Therefore, defendants' right to a fair trial can be protected by careful and vigorous voir dire, and the prospect of overwhelming pretrial publicity, while it may test the ethical behavior of counsel, does not in itself provide good cause for issuing a protective order.

#### d. *Public Interest*

 There is substantial public interest to support disclosure of the information involved in this matter to the public in this case. In applying the "good cause" test under Rule 26(c), the Court must weigh potential harm caused by disclosure against the prospect of benefits to the public of disclosing the information. *See Hawley,* 131 F.R.D. at 584. "[A]ccess is particularly appropriate when the subject matter of the litigation is of especial public interest...." *In re "Agent Orange",* 821 F.2d at 146.

The public has a strong interest in assessing the truthfulness of allegations of official misconduct, and whether agencies that are responsible for investigating and adjudicating complaints of misconduct have acted properly and wisely. " '[A]ccess to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state.' " *Braun v. City of Taft (Polston),* 154 Cal.App.3d 332, 341, 201 Cal.Rptr. 654 (1984) (quoting Cal.Gov't Code § 6250). The federal government also has "an interest in maintaining the integrity of state and federal law enforcement institutions. Misconduct by individual officers, incompetent internal investigations, or questionable supervisory practices must be exposed if they exist." *Skibo v. City of New York,* 109 F.R.D. 58, 61 (E.D.N.Y.1985) (ordering disclosure of files of civilian complaint review board concerning complaints against officers). "Lawfulness of police operations is a matter of great concern to citizens in a democracy and protective orders must not be granted without that public interest in mind." *King,* 121 F.R.D. at 190.

However, the public's interest in the *information* disclosed in the tapes does not necessarily warrant disclosure of the tapes themselves. Disclosure of the transcripts of the tapes ensures public access to the information contained in the tapes. Plaintiff has presented no reason to believe that the transcripts are inaccurate and can, in any event, verify the accuracy of the transcripts with the tapes to be produced by defendants. Consequently, public disclosure of the tapes serves no public interest. On the other hand, the ability to edit and present the words spoken on the tape in a context other than the questions and answers themselves provides a potential for biased presentation of the information and for invasion of the privacy of the speaker. Balancing the interests, then, favors issuance of a protective order against public disclosure of the tapes themselves.

In sum, the decision of Magistrate Judge Langford is not clearly erroneous or contrary to law. However, the Court holds that while plaintiff should have access to the tapes for the purpose of confirming the accuracy of the transcripts, good cause exists for a protective order against public disclosure of the tapes. Although that potential for abuse may also exist in the use of the transcript, the court is satisfied that it is significantly less in that circumstance. Accordingly, defendants must produce the tapes and transcripts to plaintiff, but plaintiff shall make no public disclosure of the tapes.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for reconsideration of the Order by Magistrate Judge Langford is GRANTED IN PART. The Court orders as follows:

1. Defendants shall produce the tapes and transcripts of witnesses interviewed during the Police Commission's investigation into plaintiff's complaint by 5:00 p.m., January 31, 1995.

2. Plaintiff shall not disclose to the public any portion of the tapes.

IT IS SO ORDERED.